**Francis D. CALLEY**

v.

**UNITED STATES of America.**

**Civ. A. No. 1044.**

United States District Court
S. D. West Virginia,
Huntington Division.

July 30, 1963.

Campbell, McNeer, Woods & Bagley, Huntington, W. Va., Steptoe & Johnson, William C. Hill, Washington, D. C., for plaintiff.

Harry G. Camper, Jr., Charleston, W. Va., for defendant.

FIELD, Chief Judge.

In this action the plaintiff seeks to recover income taxes which he alleges to have been erroneously assessed and collected. The case was submitted on a stipulated set of facts which are essentially as follows:.

Calley and Clark Company, a former West Virginia corporation with principal offices in Huntington, functioned from 1935 to 1956 as general agent for certain insurance companies. Five of these companies, hereinafter called the Chubb Group, were managed by Chubb & Son, a New York City partnership. Calley and Clark Company also acted as general agent for Manhattan Fire and Marine Insurance Company, and for eight other companies.

As general agent, Calley and Clark Company conducted the business of these companies in various territories in Virginia, West Virginia, Ohio and Kentucky. Calley and Clark Company's representation included the writing of fire, marine, automobile and a broad field of casualty insurance. By 1956, Calley and Clark had organized a local-agency network consisting of some 56 agents, producing an annual premium volume of approximately $2,000,000 with local agents in every sizable town within its territory.

In 1956, Chubb & Son, on behalf of the Chubb Group, commenced negotiations with Calley and Clark for the purchase of substantially all of the operating assets of Calley and Clark Company, and on March 13, 1956, the stockholders of Calley and Clark adopted a plan of liquidation calling for complete liquidation within twelve months. On March 27, 1956, Calley and Clark sold to the Chubb Group its property rights in the expirations and renewals respecting policies of insurance issued by the purchasers together with all books and records, dailies, bills, binders, maps and other papers relating to such insurance for a total consideration of $100,000. On the same date the general agency agreements between Calley and Clark and the members of the Chubb Group were terminated. On May 3, 1956, Calley and Clark sold to Manhattan Fire and Marine Insurance Company its property rights in expirations and renewals respecting certain insurance policies issued by Manhattan for $8,000, and the parties terminated the general agency agreement between them.

On December 10, 1956, Calley and Clark began a series of distributions which were completed on March 9, 1957.

In its 1956 income tax return Calley and Clark reported the $108,000 received as a result of the sale of expirations and renewals as tax free proceeds derived from the sale of property under the provisions of Section 337 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 337. On May 11, 1960, the director of Internal Revenue concluded that the $108,000 received by Calley and Clark Company as a result of the above mentioned sales was not income derived from the sale of property within the meaning of Section 337 of the Code and proposed a deficiency of

$54,037.61 in corporation income taxes for the year 1956. A timely protest was filed and rejected and the proposed deficiency was assessed against Calley and Clark Company on June 17, 1960, a date subsequent to its liquidation.

On July 20, 1960, Calley and Clark having no assets with which to meet the deficiency, the defendant proposed a deficiency against the plaintiff as a stockholder-transferee in liquidation of Calley and Clark Company. This proposed deficiency of $54,037.61 was paid by plaintiff to the defendant on August 3, 1960, together with interest of $10,976.06.

The principal question presented by this case is whether a sale by a general insurance agent of expirations and renewals is a sale or exchange of property within the meaning of Section 337 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 337 (1955). Section 337(a) provides as follows:

"337(a) General rule. -If-

"(1) A corporation adopts a plan of complete liquidation on or after June 22, 1954, and

"(2) Within the 12-month period beginning on the date of the adoption of such plan, all of the assets of the corporation are distributed in complete liquidation, less assets retained to meet claims, then no gain or loss shall be recognized to such corporation from the sale or exchange by it of property within such 12-month period.

Section 337 was enacted to avoid double taxation at both corporate and shareholder levels where a corporation sells its assets at a profit and completely liquidates within one year. See Hawaiian Trust Co. Ltd. v. United States 291 F.2d 761 (9th Cir., 1961). Prior to its enactment there was some uncertainty in determining whether such a sale was in fact made by the corporation or the shareholders. United States v. Cumberland Public Service Co., 338 U.S. 451, 70 S.Ct. 280, 94 L.Ed. 251 (1950); Commissioner of Internal Revenue v.

Court Holding Co., 324 U.S. 331, 65 S.Ct. 707, 89 L.Ed. 981 (1945). See H.Rep. 1337, 83rd Cong., 2d Sess. 1954, pp. 38–39 (U.S.Code Cong. & Adm.News, 1954, p. 4064).

The defendant contends that in reality what was sold here was the right to future income which would be excluded from the meaning of property under Section 337, Family Record Plan, Inc. v. Commissioner, 36 T.C. 305 (1961). This contention is not supported by either the facts of this case or by the law in regard to expirations. The contract between Calley and Clark Company and the insurance companies, which created the general agency relationship, clearly provides that either party may terminate the agency agreement by a written notice sixty days prior to termination, and that the agent shall have no right to future commissions. It is a stipulated fact that the Chubb Group believed it would have been prohibited from soliciting renewals of expiring insurance contracts by direct solicitation of the insured, by reappointing local agents supervised by Calley and Clark Company or by appointing new agents, without incurring a liability in law or equity to Calley and Clark Company.

This belief on the part of Chubb was well founded. In V. L. Phillips & Co., Inc. v. Pennsylvania Threshermen & Farmers' Mut. Cas. Co., 199 F.2d 244, p. 246 (4th Cir., 1952), the court defined expirations as follows:

"'Expirations' in the insurance field has a definite and well recognized meaning; it embodies the records of an insurance agency by which the agent has available a copy of the policy issued to the insured or records containing the date of the insurance policy, the name of the insured, the date of its expiration, the amount of insurance, premiums, property covered and terms of insurance. This information enables the agent to contact the insured before the existing contract expires and arms him with the information essential to secure another policy and to pre-

sent to the insured a solution for his insurance requirements. It has been determined that this information is of vital assistance to the agency in carrying on the insurance business and it has become, in the insurance field, recognized as a valuable asset in the nature of good will.

"There is ample authority for the rule which is generally recognized that a fire or casualty insurance agent has a property right to the expirations on business produced by him. (Citing cases.)"

The Phillips case went on to hold that if, upon termination of the agency relationship, the general agent was not in default the use and control of the expiration records would constitute property of the agent, and the company would not have the right to solicit directly from the insured nor to do so indirectly by appointing the general agent's former agents to do so; nor could the company supply such information on these insureds to a new agent and permit him to solicit the renewals.

The Government's contention that in effect Calley and Clark were being paid for the estimated present value of renewal commissions ignores the basic difference between the field of life insurance on the one hand and the field of fire, casualty and other related fields of insurance. In the field of life insurance the agent receives not only his initial commission but receives commissions each year thereafter when the premiums are paid as long as the policy is in effect. In the field of fire or casualty insurance the records and data in regard to expirations give the insurance agent valuable information which quite often enables him to renew expiring policies, but they are not guaranteed income nor do they represent guaranteed commissions to the insurance agent, for on each occasion he must solicit the renewal of these policies to earn his commission. The Government argues, however, that since Chubb and Manhattan under their operating procedures already had in their files the pertinent information relative to renewals or expirations, it is unreasonable to assume that they would pay $108,000 for something they already had. This argument, however, ignores the nature of the rights involved in these expirations. The term "expirations" connotes not only the physical records of the insurance agency relative to the various policyholders, but the exclusive right to use those records to solicit renewals. This is the clear import of the Phillips case wherein the court observed 199 F.2d at page 248:

"The provision of the Contract that the 'Agent's record, use and control of the expirations shall be deemed the property of the Agent and left in his undisputed possession' meant more than he should have possession of the records of policies that had been written. Its purpose was to vest in him the good will of the business which he was about to build up and to undertake that the Company would not interfere with this business by soliciting renewals thereof in the event of the termination of the agency without his fault."

The Government concedes that the statutory definition of "property" in Section 337 is substantially the same as the definition of "property" and "capital asset" in 26 U.S.C.A. § 1221. In two relatively recent cases the Tax Court of the United States has had occasion to consider insurance "expirations" similar to those here in the context of Section 1221. In Aitken v. Commissioner, 35 T.C. 227 (1960), the taxpayer was employed as an insurance solicitor by an incorporated agency. The contract of employment provided that he was the owner of all "expirations" on insurance written by him. In 1956 the taxpayer entered into a contract under which he sold to his employer the insurance "expirations" for the sum of $10,000. The contract also provided that the taxpayer would not compete with his employer in the insurance business for a period of three years. The Commissioner of Internal Revenue made a deter-

mination that the consideration received under this contract was for the sale or relinquishment of future commissions and was, therefore, subject to ordinary income treatment.

The Tax Court held that the contract constituted the transfer of a property right and, in pointing out the subject matter of the contract, referred to the definition and essential nature of such "expirations" set forth in the Phillips case. The court made this observation:

"Considering the nature of the expirations, we entertain no doubt that whether we refer to the expirations as trade secrets or confidences, customer lists, good will, or just intangibles in the nature of good will, they constituted capital assets."

In response to the argument that there was no "sale" or "exchange" of a capital asset, the court stated that there was in fact a transfer of valuable property rights which did not terminate or vanish, and that the "expirations" existed after the contract as the exclusive property of the purchasing agency.

The Tax Court had before it a similar state of facts in the case of Killian v. Commissioner, decided March 27, 1961 (1961 P–H T.C. Memorandum Decisions, paragraph 61,083), and again decided in favor of the taxpayer, recognizing the authority of the Aitken case. The Commissioner appealed this decision to the Fifth Circuit Court of Appeals where it was affirmed sub nomine Commissioner of Internal Revenue v. Morris L. Killian, 314 F.2d 852. In affirming the Tax Court, the Fifth Circuit stated 314 F.2d at page 855:

"The reality of the transaction here was that Killian sold to Ryan and Fry information concerning fire and casualty policies written by him over a period of many years. This information did indeed have intrinsic economic value in the nature of good will, which being made accessible to the purchasers gave reasonable expectation that 'the old customers will resort to the old place,' as it was put in Nelson

Weaver Realty Co. v. Commissioner of Internal Revenue, [5 Cir.] 307 F.2d 897 * * *.

"It is settled that good will, as a distinct property right, is a capital asset under the tax laws."

It is my conclusion that the sale of the expirations and renewals by Calley and Clark to Chubb & Son and Manhattan constituted a "sale" of "property" within the meaning of Section 337 of the Internal Revenue Code of 1954 upon which no gain or loss should have been recognized to the corporation. Judgment should be entered for the plaintiff and counsel may prepare an appropriate order incorporating this opinion by reference therein.