**ALPHACO, INC., a Delaware Corporation, Plaintiff-Appellee,**

v.

**E. J. NELSON, District Director of Internal Revenue, Defendant-Appellant.**

No. 16123.

United States Court of Appeals
Seventh Circuit.

Oct. 26, 1967.

Mitchell Rogovin, Asst. Atty. Gen., Tax Div., William A. Friedlander, Lee A. Jackson, Harry Baum, Attys., Dept. of Justice, Washington, D. C., James B. Brennan, U. S. Atty., of counsel, for appellant.

William S. Wood, Nowlan, Mouat, Lovejoy, McGuire & Wood, Janesville, Wis., for appellee.

Before HASTINGS, Chief Judge, and CASTLE and SWYGERT, Circuit Judges.

CASTLE, Circuit Judge.

The plaintiff-appellee, Alphaco, Inc., brought suit in the District Court for recovery of an alleged overpayment of federal income tax. The case was tried on stipulated facts. The District Court found for the plaintiff taxpayer and entered judgment against the District Director of Internal Revenue who prosecutes this appeal.

The record discloses that during its fiscal year ending September 30, 1961, the taxpayer, pursuant to a plan of complete liquidation qualifying under the provisions of Section 337 of the Internal Revenue Code of 1954 (26 U.S.C.A. § 337),[1] sold all of its assets at a gain in excess of one million dollars and distributed the proceeds, less amounts retained to meet claims, to its shareholders. By

---

1. In pertinent part Section 337 provides:
"(a) General rule. — If —
(1) a corporation adopts a plan of complete liquidation on or after June 22, 1954, and
(2) within the 12-month period beginning on the date of the adoption of such plan, all of the assets of the corporation are distributed in complete liquidation, less assets retained to meet claims,
then no gain or loss shall be recognized to such corporation from the sale or exchange by it of property within such 12-month period."

virtue of Section 337 no capital gain was to be recognized from the sale of the corporation's capital assets and, accordingly, no tax on such gain was reflected in the taxpayer's federal income tax return for the fiscal year 1960–1961. However, on such return the taxpayer did claim and take a deduction for ordinary and necessary business expenses in an amount including $54,103.47 representing expenditures (brokers' commissions and accountants' and attorneys' fees) incurred in effecting the sale of the taxpayer's capital assets. The defendant District Director disallowed this item and made a deficiency assessment, accordingly. The taxpayer paid this deficiency assessment and sued for a refund. The District Court held that the expenses of selling the corporation's capital assets were to be treated as ordinary business expenses under Section 162(a) of the 1954 Code (26 U.S.C.A. § 162(a)) and awarded judgment for the taxpayer.

We reverse. It is our conclusion that the allowance of the costs incident to the sale of capital assets as an ordinary and necessary business expense deductible from ordinary income not only violates a principle which appears basic in the scheme underlying the income tax statute, but is also incongruous with the purpose for which Section 337 was enacted.

The narrow issue here presented and adjudicated is whether expenditures incurred by a taxpayer corporation which are directly related to a sale of its capital assets in the course of a complete corporate liquidation qualifying under Section 337 constitute business expenses deductible from the ordinary income reported in the corporation's final return. We are not here concerned with the treatment to be given corporate liquidation expenses other than those directly incurred in the sale of the corporation's capital assets.

The scheme of the income tax statute is that the cost of producing a given type of income is to be accorded the same tax character as the income produced—that related disbursements and receipts should be given consistent tax treatment. Spangler v. Commissioner of Internal Revenue, 9 Cir., 323 F.2d 913, 918. The exemption contained in Section 337 operates to remove capital gain from the incidence of the income tax insofar as the liquidating corporation is concerned. Consequently, there is no related item of taxable corporate income in the computation of which the costs of producing the capital gain can be correlated consonant with the scheme of the statute. Under the plan of the statute, where capital gain is given no recognition and has no tax incidence to the corporation, the costs of producing that gain should likewise be ignored. And, the fact that there is no recognizable capital gain in the computation of which the cost of producing that gain can be reflected does not in our opinion afford a basis for equating such cost with ordinary business expenses. So to do would be contrary to the general rule recognized in Spreckels v. Helvering (Commissioner of Internal Revenue) 315 U.S. 626, 62 S.Ct. 777, 86 L.Ed. 1073, that such selling costs are capital expenditures and are not deductible as ordinary and necessary business expenses but are to be treated as offsets against selling price relevant only to the determination of capital gain or loss.

We perceive nothing in the language or in the ultimate objective of Section 337 indicative of any purpose to carve out an exception to that general rule so as to transmute the selling costs, for tax purposes, from their normal character as capital selling expenses into ordinary business expenses. On the contrary, to permit the costs of selling the corporate assets to be deducted by the corporation as ordinary business expenses would frustrate the purpose for which Section 337 was enacted.

The precise problem at which the measure was aimed was created by the two decisions of the Supreme Court in Commissioner of Internal Revenue v. Court Holding Co., 324 U.S. 331, 65 S.Ct. 707, 89 L.Ed. 981, and United States v. Cumberland Public Service Co., 338 U.S. 451, 70 S.Ct. 280, 94 L.Ed. 251. These decisions recognized a variance in tax

consequences depending upon whether the corporation effected the sale of its capital assets in the course of the corporate liquidation or such sale was made by the shareholders subsequent to a distribution of the property to them. From the congressional committee reports [2] it does not appear that Congress was concerned with relieving the corporation of taxes but with the primary objective of eliminating the need for the factual determination required under the *Court Holding Co.* and *Cumberland* decisions. To do so it was essential to eliminate any tax difference which could turn on that determination—to preclude differential tax treatment to liquidating stockholders based upon the mere formality of whether the sale of capital assets was made before or after a liquidation distribution. The device employed to accomplish these results was to eliminate the tax at the corporate level and impose only a single tax at the stockholder level. In Bittker and Eustice, Federal Income Taxation of Corporations and Shareholders (Second Ed. (1966)), Section 9.63, p. 392, it is pointed out:

> "The new legislation, section 337 of the 1954 Code, adopts as its principle the elimination of the corporate tax, whether the sale is made by the corporation in anticipation of the liquidation or by the shareholders thereafter. By virtue of section 337, the tax consequences to the shareholders ordinarily will be identical, whether the corporation sells the assets and then distributes the proceeds in complete liquidation or distributes the assets in kind to the shareholders for sale by them."

The following example is illustrative. Let us assume that a corporation's capital assets have a fair market value of $10,000, the sale of which (by the corporation or by its shareholder) would entail selling costs of $1,000, and that the cost basis of the stock is $6,000. Following sale by the corporation, $9,000 would be left, net, to distribute to the shareholder in exchange for his stock, and the capital gain to the shareholder would be $3,000. If the property was first distributed to the shareholder and then sold by him, he would report a capital gain of $4,000 ($10,000 value of the assets, less $6,000 basis of the stock) and then deduct the $1,000 selling cost—leaving him with the same $3,000 capital gain as in the first situation. Since, under Section 337, the only tax in either event is that paid by the shareholder, and since he would pay the same tax in either of the above situations, it is obvious that the tax-equalizing purpose of Section 337 is achieved.

But if the corporation in such case is permitted to deduct the selling cost from ordinary income as an ordinary and necessary business expense when it sells the property, then the corporation (and through it, the shareholder) receives an additional tax benefit in the form of the deduction against the ordinary income (the earning of which had no connection with the capital sale transaction) reported in the corporation's last return. The tax differential Congress sought to avoid would thus be re-created, and the purpose and objective of Section 337 wholly frustrated and defeated. Consequently, the allowance of the costs incident to the sale of capital assets as an ordinary and necessary business expense deductible from ordinary income was improper in the instant case. The District Court erred in its conclusion to the contrary, and in granting judgment for the taxpayer based thereon.

The conclusion we have reached with respect to the non-deductibility of capital asset selling expenses from ordinary income is supported by the Tax Court's similar decision in Ruprecht v. Commissioner of Internal Revenue, decided May 4, 1961 (P-H Memo T.C., par. 61,125), and the rationale of Towanda Textiles, Inc. v. United States, Ct.Cl., 180 F.Supp. 373, and Winer v. Commissioner of Internal Revenue, 1

**2.** H.Rep. No. 1337, 83d Cong., 2d Sess., pp. 38–39, A–106–A–107 (3 U.S.C.Cong. & Adm.News (1954) 4017, 4064, 4244–4245.

S.Rep. No. 1622, 83d Cong., 2d Sess., pp. 48–49, 258–259 (3 U.S.C.Cong. & Adm. News (1954) 4621, 4679–4680, 4896–4897.

Cir., 371 F.2d 684. The taxpayer, and the trial court in its memorandum opinion, rely heavily upon United States v. Mountain States Mixed Feed Company, 10 Cir., 365 F.2d 244. But *Mountain,* in addition to capital asset selling expenses, also involved ordinary liquidation expenses, and the Tenth Circuit did not undertake to elaborate on the basis for its conclusory statement (365 F.2d 244, 245) that:

> "Certainly if the cost of distribution in kind may be deducted as ordinary expenses, the legal cost of the sale of assets should likewise be deductible."

Its opinion does not examine the critical considerations we have discussed herein. We decline to be persuaded by *Mountain.*

Likewise, we do not regard any of the additional cases relied upon by the taxpayer dispositive of the precise issue here involved. Pacific Coast Biscuit Co. v. Commissioner of Internal Revenue, 32 B.T.A. 39, involved only the general question of whether liquidation expenses were deductible, and no issue was there raised as to what was or was not an ordinary liquidation expense as distinguished from an expense attributable to the liquidation sale of a capital asset. Gravois Planing Mill Co. v. Commissioner of Internal Revenue, 8 Cir., 299 F.2d 199, did not involve the deductibility of selling costs. The primary issue there was whether liquidating expenses of a partial, as opposed to a complete, liquidation were deductible. And, Pridemark, Inc. v. Commissioner of Internal Revenue, 4 Cir., 345 F.2d 35, did not purport to deal with the distinction between non-sale liquidation expenses and expenses incurred in the sale of capital assets. The Fourth Circuit reversed the Tax Court's holding that there was not a complete but only a partial liquidation, and followed *Pacific Coast,* supra, without undertaking to discuss the Commissioner's alternative argument that, even where there has been a complete liquidation, selling expenses of capital assets are not deductible as ordinary business expenses.

The judgment order of the District Court is reversed.

Reversed.