OF COURSE, INC., (Formerly: the Isaac Hamburger & Sons Company), a Maryland corporation in Dissolution, Appellee,

v.

COMMISSIONER OF INTERNAL REVENUE, Appellant.

No. 73-1495.

United States Court of Appeals, Fourth Circuit.

July 2, 1974.

---

---

David English Carmack, Atty., Tax Div., U. S. Dept. of Justice (Scott P. Crampton, Asst. Atty. Gen., Ernest J. Brown and Elmer J. Kelsey, Attys., Tax Div., U. S. Dept. of Justice, on brief) for appellant.

George W. Liebmann, Baltimore, Md. (George Gump, Shale D. Stiller and Frank, Bernstein, Conaway & Goldman, Baltimore, Md., on brief) for appellee.

1.  Cf., however, Alphaco, Inc. v. Nelson (7th Cir. 1967) 385 F.2d 244, at p. 247.

2.  See Connery v. United States (3d Cir. 1972) 460 F.2d 1130; Lanrao, Inc. v. United States (6th Cir. 1970) 422 F.2d 481, cert.

755

Before HAYNSWORTH, Chief Judge, BOREMAN, Senior Circuit Judge, and WINTER, CRAVEN, BUTZNER, RUSSELL, FIELD and WIDENER, Circuit Judges, sitting en banc on resubmission.

DONALD RUSSELL, Circuit Judge:

This appeal poses for determination the deductibility as a business expense, qualifying under Section 162(a), 26 U.S.C. (Internal Revenue Code of 1954) of attorneys' fees incurred in connection with the sale of capital assets in a Section 337(a), Internal Revenue Code of 1954, corporate liquidation. The corporate taxpayer involved adopted its plan of liquidation on January 18, 1968 and made the sale of its assets on February 5, 1968. It realized a capital gain in excess of $10,000 on this sale. It, however, made no report of such gain as income on its tax return for the year of liquidation, because of the non-recognition provisions of Section 337. Within twelve months after the adoption of its plan of liquidation, the taxpayer distributed the proceeds of the sale to its stockholders, less amounts retained to meet claims. On its tax return for the year of liquidation, the taxpayer claimed as an ordinary and necessary business expense under the provisions of Section 162(a), Internal Revenue Code, 1954, $9,500 which concededly had been incurred by the taxpayer for legal services performed directly in connection with the sale of its capital assets. The Commissioner denied the deduction and determined a deficiency accordingly. On appeal, the Tax Court, feeling bound by Pridemark, Inc. v. Commissioner (4th Cir. 1965) 345 F.2d 35, sustained the taxpayer. The Commissioner has appealed. He concedes that Pridemark supports the result reached by the Tax Court[1] but argues that Pridemark is against the decided weight of authority[2]

den. 398 U.S. 928, 90 S.Ct. 1816, 26 L.Ed.2d 89; Alphaco, Inc. v. Nelson, supra; United States v. Morton (8th Cir. 1968) 387 F.2d 441; Great Lakes Pipe Line Company v. United States (D.C.Mo.1972) 352 F.Supp. 1159.

and represents an inadmissible application of Section 337. Oral argument of the Commissioner's appeal was heard by a panel of this Court but, some doubt developing in the panel with reference to the correctness of *Pridemark*, the appeal was certified for *en banc* consideration.[3] Since the issue presented by the appeal was legal and not factual and the record of the oral argument of the parties before the panel was available to the *en banc* court, it was concluded that oral argument might be dispensed with and the cause disposed of on the record, written briefs of the parties and the tape of the oral argument before the original panel. On the basis of that record, we reverse.

After a careful review of the authorities, we are persuaded that, contrary to the rule stated in *Pridemark*, attorneys' fees directly related to a sale of capital assets, as concededly the attorneys' fees claimed as a business expense in this case were, are not deductible as a business expense under Section 162(a) of the Internal Revenue Code. The fact that a corporation is in liquidation does not change or alter the manner in which its profits or losses, incurred during the twelve-month period allowed under 337 for liquidation, are to be calculated for tax purposes, save in the particular later discussed. Thus profits arising from normal operations during such period are to be calculated and taxed as ordinary income. Pridemark, Inc. v. Commissioner, supra, at p. 45, n. 14; Central Building & Loan Assn. v. Commissioner (1960) 34 T.C. 447, 7 Mertens, Law of Federal Income Taxation, Sec. 38.27 at p. 82.[4] Similarly, if the liquidating corporation has expensed certain materials or assets purchased in earlier years and sells the same in the year of liquidation, in line with the general rule prevailing in such cases, the proceeds of the sale are not recognized as qualifying for capital gains treatment but are taxable as ordinary income realized in the year of liquidation. Citizens Federal S. & L. Ass'n of Cleveland v. United States (1961) 290 F.2d 932, 936, 154 Ct.Cl. 305; Commissioner v. Anders (10th Cir. 1969) 414 F.2d 1283, 1287; Citizens' Acceptance Corporation v. United States (3d Cir. 1972) 462 F.2d 751, 756. Accepting the premise, then, that the established rules for computing taxes prevail during the period of liquidation, it follows that attorneys' fees directly related to a sale of capital assets made in the course of liquidation are not to be considered business expenses under Section 162 but, were it not for Section 337, discussed later, are to be treated as capital expenditures. *See* United States v. Cumberland Pub. Serv. Co. (1950) 338 U.S. 451, 452, 70 S.Ct. 280, 94 L.Ed. 251. This is true, because "[S]ince the inception of the present federal income tax in 1913," the rule has been that costs, including attorneys' fees, directly incurred in either the acquisition or disposition of a capital asset, have been considered capital expenditures, to be treated as offsets against selling price, relative only to the determination of capital losses or gains and "cannot be deducted as 'ordinary and necessary,' either as a business expense under § 162 of the Code [of 1954] or as an expense of 'management, conservation, or maintenance' under § 212." Woodward v. Commissioner (1970) 397 U.S. 572, 574–575, 90 S.Ct. 1302, 1305, 25 L.Ed.2d

---

3. In re Central Railroad Company of New Jersey (3d Cir. 1973) 485 F.2d 208, 211; United States v. Lewis (5th Cir. 1973) 475 F.2d 571, 574; Insurance Agents' International Union v. N.L.R.B. (1958) 104 U.S. App.D.C. 218, 260 F.2d 736, aff. 361 U.S. 477, 80 S.Ct. 419, 4 L.Ed.2d 454; United States v. United States Vanadium Corporation (10th Cir. 1956) 230 F.2d 646, 648, cert. denied 351 U.S. 939, 76 S.Ct. 836, 100 L.Ed. 1466.

4. *Pridemark*, commenting on the effect of Section 337 on profits during liquidation, states:

"'It is intended that, during the 12-month period, sales in the ordinary course of business shall result in ordinary gain to the corporation as if the corporation were not in the process of liquidating.' * * *."

577; and Spreckels v. Commissioner (1942) 315 U.S. 626, 627–628, 62 S.Ct. 777, 86 L.Ed. 1073.

It is suggested, however, that the result reached in *Pridemark* may be justified on two grounds. First, reference is made to the provision in Section 337, which declares expressly that "no gain or loss shall be recognized to such corporation from the sale or exchange by it of property [5] within such 12-month period." Since "no gain or loss" is recognized on sales of capital assets during the period of liquidation, it is urged that expenditures connected with such sales are to be disregarded as offsets against a capital gain which is not recognized and that, under those circumstances, they must necessarily be treated as a business expense. This argument lacks appeal. If, under Section 337 no gain is recognized on the sale, it would seem logical that no offsets of expenses connected with such sale should be recognized. That is, the non-recognition of a gain should carry with it the non-recognition of any expenditures directly related to that gain. And such was the reasoning adopted in Connery v. United States, *supra* (460 F. 2d at p. 1134), where, the court said that "since capital gain is given no recognition and has no tax incidence to the corporation under the statute, legal fees paid to establish that gain should be likewise disregarded." [6] We find that reasoning compelling.

The argument of the taxpayer would disregard the clearly stated legislative purpose behind the enactment of Section 337. Congress did not intend in Section 337 to grant a tax-exemption; it was directed at correcting a very definite inequity and no more. Commissioner v. McDonald (5th Cir. 1963) 320 F.2d 109, 112; Hawaiian Trust Company, Limited v. United States (9th Cir. 1961) 291 F. 2d 761, 762.[7] The legislative purpose behind the enactment of Section 337 was correctly stated in *Pridemark* itself, (pp. 44–45):

> "Section 337 was embodied in the Internal Revenue Code of 1954 to allow liquidating corporations to avoid a double incidence of capital gains taxation—once when capital assets are sold by the corporation, and again on distribution of the proceeds to the shareholders." [8]

It sought to accomplish this purpose and to avoid the inequity of double taxation by eliminating the tax at the corporate level and by imposing only a single tax at the stockholder level.[9] The fact that, in such shift of tax liability, "the gain to the shareholders may be measured by a different basis than the gain to the corporation is of no significance. The gain realized when a liquidating corpo-

---

5. It is generally recognized that the definition of the term "property", as used in this section "is substantially the same as the definition of 'property' and 'capital asset' in 26 U.S.C.A. § 1221." Calley v. United States (D.C.W.Va.1963) 220 F.Supp. 111, 114.

6. *Cf.*, *also*, Towanda Textiles, Inc. v. United States (1960) 180 F.Supp. 373, 378, 149 Ct. Cl. 123:
   "* * * Expenses necessarily incurred to realize a capital gain reduce the amount of that gain and partake of the nature of the gain to which they relate."

7. In the Hawaiian Trust Case, at p. 772, the Court said:
   "It was not the intention of Congress, in enacting Section 337, to 'exempt' any gain from the tax, but rather to provide that the gain should not be taxed twice, both at the corporate and shareholder levels,

where the taxpayer complies with the provisions of the Act."

8. By this provision, Congress, as one commentator puts it, intended to make "the method by which a corporation that is undergoing liquidation" determinable "by business considerations rather than by a concern with tax assessments." Note, 65 Mich.L. Rev. 1508, 1512–13 (1967).

9. To the same effect was the editorial comment in Note, 65 Mich.L.Rev., *supra*, at p. 1512:
   "* * * The purpose of section 337 was to eliminate the double taxation that resulted when a corporation liquidated by selling its assets and distributing the cash received from that sale, rather than by distributing the assets themselves directly to the shareholders."

ration sells assets at a profit is promptly passed on to the shareholders and becomes part of the gain which they realize and are taxed upon when they surrender their shares for redemption." Commissioner v. McDonald, *supra* (320 F.2d at pp. 112–113). It nowhere appeared, though, that Congress intended to go beyond this very definite and limited purpose and give to expenditures that consistently and uniformly had been treated as capital expenditures, only allowable as offsets against selling price, the qualification of a business expense, to be deducted from ordinary income derived from sources and activities wholly unrelated to the sale. *Cf.,* Winer v. Commissioner (1st Cir. 1967) 371 F. 2d 684, 686. Such a result would mean that, in addition to the intended benefit of non-recognition of any gain on the sale of capital assets, the liquidating corporation and its distributee stockholders would obtain an unintended tax benefit, *i.e.,* the right to deduct expenses relating to a non-taxable transaction from other unrelated income earned by the corporate taxpayer.[10] It has often been ruled that a deduction from income, such as that claimed here, is allowable only if there is "clear provision therefor". Deputy v. DuPont (1940) 308 U.S. 488, 493, 60 S.Ct. 363, 84 L.Ed. 416. Beyond question Section 337 cannot be said to be "clear" statutory warrant for the deduction claimed by the appellees; in fact, as we have seen, its whole thrust is contrariwise. As the

Court said in Lanrao, Inc. v. United States, *supra* (422 F.2d at p. 485):

"* * * For the Courts to thus create a tax inequity from legislation designed to correct a tax inequity would be not only to disregard the express terms of the statute but to read into the statute a purpose expressly contrary to that stated at the time of its enactment."

Secondly, it seems to have been the thought of *Pridemark* that a corporate liquidation is to be treated as an entity, of which the sale of capital assets is an integral part, and, just as other expenses of the liquidation are concededly deductible as business expenses,[11] so should the expenses, including attorneys' fees or brokerage commissions connected with the sale of capital assets in the course of that liquidation. The reasoning behind this theory was set forth succinctly in United States v. Mountain States Mixed Feed Co. (10th Cir. 1966) 365 F.2d 244, 245–246:[12]

"It is difficult to determine any reason in the authorities or in the statutes for any distinction as to the type or purpose of the legal work involved. It is probable that the attorneys could account for the time they devoted to the corporate dissolution as compared with the sale of assets, but there is no reason why this sale of assets is not as much a part of the liquidation as the dissolution of the corporation. Certainly if the costs of distribution in kind may be deducted as ordinary expenses, the legal cost of

---

10. *See* Alphaco, Inc. v. Nelson, *supra* (385 F.2d at p. 246):

"But if the corporation in such case is permitted to deduct the selling cost from ordinary income as an ordinary and necessary business expense when it sells the property, then the corporation (and through it, the shareholder) receives an additional tax benefit in the form of the deduction against the ordinary income (the earning of which had no connection with the capital sale transaction) reported in the corporation's last return. The tax differential Congress sought to avoid would thus be re-created, and the purpose and objective of Section 337 wholly frus-

trated and defeated. Consequently, the allowance of the costs incident to the sale of capital assets as an ordinary and necessary business expense deductible from ordinary income was improper in the instant case."

11. *See,* however, Fewell, Deductibility of Attorneys' Fees, 8 Texas B.J. 72, 96 (1945).

12. *Pridemark* and *Mountain States* are the only Circuit authorities supporting this view. *See* Uzel & Marx, Selling Expenses in 337 Liquidation: Are they Deductible?, 33 Journal of Taxation, 290 (1970), supporting this view.

the sale of assets should likewise be deductible. Thus it is all a part of the liquidation-dissolution of the corporate entity."

It is true, as *Pridemark* and *Mountain States* hold, that expenditures connected with the dissolution and liquidation of a corporation have been found deductible as a business expense. Such characterization, however, has been characterized as "sui generis".[13] The reason commonly given for this "sui generis" result is stated in a leading text to be that, "[A]mounts expended, including legal and accounting fees, in connection with the dissolution and liquidation of a corporation, do not create a capital asset and are deductible as business expenses"; but the text-writer hastens to add, "[T]his principle has no application where the expenses involved were not costs of dissolving the corporation but arose in connection with the sale of its principal asset." 4A Mertens, Law of Federal Income Taxation, sec. 25.35, at pp. 173–4 and 182–3 (1972 rev.) As the Court said in Lanrao, Inc. v. United States, *supra* (422 F.2d at p. 484):

"* * * That expenses incurred in the dissolution of a corporation may be rationalized as being both ordinary and necessary business expenses, as was demonstrated in the *Pacific Coast Biscuit Co.*, case, *supra*, [32 B. T.A. 39] does not furnish a rational basis for the argument that capital selling expenses are converted into ordinary and necessary business expenses if they are incurred at the time of a corporate dissolution."

Indeed, the very reason assigned for allowing normal costs of liquidation to be treated as a business expense (*i. e.*, because they are related neither to the acquisition nor disposition of a capital asset)[14] would seemingly have as its logical corollary that, if the expense did qualify as a capital expenditure, it was not deductible as a business expense. And this is what we conceive to be the proper view.

As a commentator has suggested, any decision to the contrary could give rise to a wholly irrational situation. Suppose, in order to make a profitable sale of a capital asset during the liquidation period, considerable sums were expended in renovating or repairing that asset. Could the sums so expended be deducted as business expenses because they were made as an incident to liquidating the asset? Obviously, they could not. In similar fashion, attorneys' fees incurred specifically in connection with the sale of a capital asset during the period of liquidation may not qualify as a business expense.[15]

To sum up, we feel constrained to abandon the rule announced in *Pridemark* and to adopt the rule supported by the weight of authority that the claim to a deduction for attorneys' fees incurred by the corporate taxpayer in connection with the sale of capital assets in a Section 337 liquidation as a business expense must be disallowed.

Finally, the taxpayer urges that, even should we conclude to depart from the ruling made in *Pridemark*, we should do so only prospectively. We might find such argument persuasive were it evident that the rule in *Pridemark* had been a determining factor in the procedure followed by the taxpayer in the corporate liquidation. It seems plain that the taxpayer was not influenced in any action taken by it by our decision in *Pridemark*. Its decision to

---

13. *See* 4A Mertens, Law of Federal Income Taxation, sec. 26.35, at p. 174 (1972 rev.):
"Expenditures for organizing, recapitalizing, merging or dissolving a business enterprise may properly be said to be sui generis. On the other hand, none of them can hardly be considered as part of the cost of operating the business for the taxable year in which they were paid or incurred. On the other hand, it is arguable that no capital asset is acquired by the taxpayer which, as a business enterprise, is being organized, recapitalized, merged or dissolved."

14. Gravois Planing Mill Company v. C.I.R. (8th Cir. 1962) 299 F.2d 199, 206.

15. Note, 65 Mich.L.Rev. 1508, 1513.

liquidate and the procedure followed would have been the same whether *Pridemark* prevailed or not. Moreover, it should have known that *Pridemark* had not been acquiesced in by the Commissioner and was contrary to the majority of the Circuits. It unquestionably proceeded with full appreciation that the Commissioner would contest the deduction and our ruling in *Pridemark.* Under these circumstances, we perceive no reason to give only a prospective application to our decision. *Cf.*, Dixon v. United States (1965) 381 U.S. 68, 72–73, 85 S.Ct. 1301, 14 L.Ed.2d 223; Hartman Tobacco Company v. United States (2d Cir. 1973) 471 F.2d 1327.

The decision of the Tax Court sustaining the claim herein is accordingly reversed.

Reversed.

BOREMAN, Senior Circuit Judge (concurring in part and dissenting in part):

Somewhat reluctantly and not without some hesitation I concur and join my brothers in the decision to overrule our earlier holding in Pridemark, Inc., v. Commissioner, 345 F.2d 35 (4 Cir. 1965). However, I respectfully state my disagreement with the majority in its denial of prospective application of the change in the rule.

Rule 35 of Fed.R.App.P. provides that an appeal may be heard by the Court of Appeals in banc and a party may suggest the appropriateness of a hearing in banc. This Circuit has deemed it unseemly, presumptuous and an unacceptable practice for one panel to assume to overrule a decision of another panel of this court; the decision of a panel becomes the law of the Circuit until it is overruled by the court sitting in banc.

Until 1970 the Tax Court of the United States had not followed automatically the decisions of the Court of Appeals to which its determination would be appealable. But that practice was abandoned by the Tax Court in its decision in Golsen v. Commissioner, 54 Tax Court 742, 757 (1970):

> [W]e think that where the Court of Appeals to which appeal lies has already passed upon the issue before us, efficient and harmonious judicial administration calls for us to follow the decision of that court.

Consistent with that pronouncement the Tax Court, while criticizing *Pridemark,* recognized that decision as representing the law of this Circuit and admittedly felt bound to follow it.

The Government, too, recognized the fact that *Pridemark* represented the law of this Circuit but it was obvious from the Government's approach to the prosecution of its appeal that its real objective was to persuade this court that *Pridemark* had been incorrectly decided, that it was against the weight of authority and that it should be overruled. It now appears that the Government has been successful in attaining its objective.

But at the same time the Government interposes strenuous objection to prospective application of the the new rule. It would fault the taxpayer for following the law of the Circuit as determined and established by this court. Ordinarily, where there has been a division of the Circuits on a question with which the Government is concerned it properly seeks resolution of the conflict by the Supreme Court of the United States.

In this court's positive indication of its willingness to overrule a prior decision in a tax matter adverse to the Government, in the absence of a clearly supervening determination by Congress or the Supreme Court, the effect of the determination will be to drastically accord weight on the side of the Government in the process of negotiation and settlement of tax cases, even including cases where the Circuit in question has declared clearly controlling law adverse to the Government's position. All questions in tax cases in which there is a split among the Circuits (and there are

many which develop under the Internal Revenue Code) will be considered open with respect to the affairs of all taxpayers, including those residing in Circuits which have already passed upon the question. The Government will be encouraged to use the possibility of such overruling of decisions in this Circuit, as it has in this instance, as a means to discourage the Supreme Court from resolving such conflicts among Circuits. Additionally, the possible availability to the Government of such overruling decisions in the Circuits (as a practical matter not available to private parties) will serve as an inducement or invitation to the Government to refrain from seeking resolution of these questions by Congress.

The Government's approach to the precedential force of decisions in tax cases is strange, indeed. It has now been successful in its effort to have this court effectively hold that once a division of opinion arises between and among Circuits the rule announced in those Circuits rejecting the Government's position should be open to attack in connection with each case that may subsequently arise in such Circuits.

This procedure favored and adopted by the Government opens up only a one-way street. Few, if any, taxpayers who are confronted with a pre-existing decision in their particular Circuit which supports the Government, will be intrepid enough or financially strong enough to carry a case seeking an overruling decision through the Tax Court, through a regular panel, and through the Court of Appeals in banc. In the instant case the Government could have sought initially a hearing of the appeal in banc, but it elected not to do so. Thus, the taxpayer has been subjected to a three-level proceeding with all the attendant delays, burdens, costs and expenses. I venture to say that the costs and expenses are times greater than the amount of tax liability in controversy.

Counsel for the Government has opposed the proposal that, if this court were to overrule *Pridemark*, its judg-

ment should be prospective only, apparently considering that the additional tax and the costs and expenses of the litigation here and in the Tax Court appropriately penalize the taxpayer for its intransigence in *relying* upon an unreversed decision of this court which established the law of this Circuit.

It is my individual opinion that changing the established rules in the middle of the game is unjust, unfair, and inconsistent with the operation of a viable system of legal precedents, particularly to a taxpayer such as this one with a relatively small amount at stake. The controlling law of this Circuit, as it existed at the time of taxpayer's transaction, should be applied and taxpayer should have the right to any tax benefit available to it under *Pridemark*. It is unconscionable to hold otherwise. In all fairness and justice I cannot be persuaded to join in placing the taxpayer in such an unfavorable and unreasonable position by a denial of prospective application of our decision which definitely changes the rules of the game.