BENEDICT OIL COMPANY, a Delaware Corporation and Benedict I. Lubell, as Trustee of the Jeanette and Samuel Lubell Foundation, Norma R. Lubell and First National Bank and Trust Company of Tulsa, as Co-Trustees of the Trust for the Benefit of Ann Lubell Margolis, Norma R. Lubell and the First National Bank and Trust Company of Tulsa, as Co-Trustees of the Trust for the Benefit of John David Lubell, Benedict I. Lubell, Grace L. Brandt, Shirley L. Black, John David Lubell, Jan Borgenicht Schwartz, Berta Borgenicht Kerr, Lois Borgenicht, Leon David Black, Judith Ellen Black Nadler, Ann Lubell Margolis, M. Robert Gallop, as Trustees of the Trust for the Benefit of Leon David Black, and M. Robert Gallop, as Trustee of the Trust for the Benefit of Judith Ellen Black Nadler, Plaintiffs-Appellees,

v.

UNITED STATES of America, Defendant-Appellant.

No. 76–1868.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Jan. 26, 1978.

Decided Aug. 17, 1978.

David English Carmack, Washington, D. C. (Scott P. Crampton, Asst. Atty. Gen.,

Myron C. Baum, Acting Asst. Atty. Gen., Gilbert E. Andrews and Leonard J. Henske, Jr., Attys. Tax Division, Dept. of Justice, Washington, D. C., with him on briefs), for defendant-appellant.

Robert L. McGowen, Tulsa, Okl. (J. Denny Moffett, Tulsa, Okl., with him on brief), for plaintiffs-appellees.

Before SETH, Chief Judge, and HOLLOWAY, McWILLIAMS, BARRETT, DOYLE, McKAY and LOGAN, Circuit Judges (en banc).

LOGAN, Circuit Judge.

This appeal is by the United States from a district court decision which held that certain costs incurred by Benedict Oil Company (Benedict or taxpayer) in a corporate liquidation under Section 337 of the Internal Revenue Code of 1954 (IRC) may be deducted as ordinary and necessary business expenses. The government contends that these costs must be offset against the gain from the sale of the assets and asks that we overrule our decision in *United States v. Mountain States Mixed Feed Co.*, 365 F.2d 244 (10th Cir. 1966), which the lower court properly held controlled its determination.

Benedict (formerly Bell Oil & Gas Company) is a dissolved Delaware corporation which had conducted business in Oklahoma prior to its dissolution. On June 21, 1965, the corporation and its shareholders adopted a plan of complete liquidation and dissolution under IRC § 337. A few days later it contracted to sell all of its assets, other than certain cash and oil and gas properties, for a combination of cash and assumption of liabilities by the purchaser totalling $14,048,843. The corporation incurred expenses in the liquidation of which $225,317.73 were found to be accounting, legal and brokerage fees attributable to the sale of assets.

Benedict's 1965 income tax return, as amended, showed a gain of $2,396,711 on the sale, with the entire $225,317.73 at issue here treated as ordinary business expenses. Part of the gain on the sale was recognized as ordinary income by the corporation be-

cause of the recapture provisions of IRC § 1245. The rest was not recognized at the corporate entity level in reliance upon IRC § 337. Because of the difference in treatment between long term capital gains and ordinary income the proper characterization of the selling expenses—as an offset against the sales price or as ordinary and necessary business expense—is the central issue in the case.

## I

This Court in *Mountain States* held that legal fees related to the sale of assets during a Section 337 liquidation were deductible as ordinary and necessary business expenses under IRC § 162(a). That opinion was issued August 12, 1966, and followed the only other circuit court decision which had been rendered to that time, *Pridemark, Inc. v. Commissioner of Internal Revenue*, 345 F.2d 35 (4th Cir. 1965). *Pridemark* has now been overruled by the Fourth Circuit, sitting en banc. *Of Course, Inc. v. Commissioner of Internal Revenue*, 499 F.2d 754 (4th Cir. 1974). The other circuits which have passed upon the question have all held that the selling expenses must be offset against the gain on the sale. *Alphaco, Inc. v. Nelson*, 385 F.2d 244 (7th Cir. 1967); *United States v. Morton*, 387 F.2d 441 (8th Cir. 1968); *Lanrao, Inc. v. United States*, 422 F.2d 481 (6th Cir.), *cert. denied*, 398 U.S. 928, 90 S.Ct. 1816, 26 L.Ed.2d 89 (1970); *Connery v. United States*, 460 F.2d 1130 (3d Cir. 1972); *Page v. Commissioner of Internal Revenue*, 524 F.2d 1149 (9th Cir. 1975). By this decision we abandon our prior holding and also rule that the expenses attributable to the sale of the assets must be offset against the gain from the sale, and are not deductible under IRC § 162(a).

Tax consequences in the normal complete liquidation of a corporation, not a subsidiary of another corporation, are governed by Internal Revenue Code §§ 331 and 336.[1] Section 336 declares that no gain or loss shall be recognized to the liquidating corporation on the distribution of property to the shareholder. Section 331 states that the property received by the shareholders shall be treated as in full payment in exchange for the stock. This means, as applicable here, that the excess of the fair market value of the cash and assets distributed to the shareholders, if any, above the shareholder's basis in the stock is taxed as capital gain.

Prior to 1954 there were no special provisions in the law concerning sales by the corporation of its assets during the course of liquidation, or while attempting to turn assets into cash to distribute to the shareholders. The corporation filed income tax returns as long as it continued to do business, and reported its income and deductions in the usual manner. In so doing it would be subject to the traditional rule that costs incurred in selling capital assets were capital expenditures and not ordinary deductible expense. This was reaffirmed recently in *Woodward v. Commissioner of Internal Revenue*, 397 U.S. 572, 574–575, 90 S.Ct. 1302, 1304, 25 L.Ed.2d 577 (1970) as follows:

Since the inception of the present federal income tax in 1913, capital expenditures have not been deductible. See Internal Revenue Code of 1954, § 263. Such expenditures are added to the basis of the capital asset with respect to which they are incurred, and are taken into account for tax purposes either through

---

1. There is also the so-called "one month" liquidation, under IRC § 333, originally enacted as a temporary expedient to encourage the liquidation of personal holding companies, but now a permanent part of the Code. It is used mostly where a corporation holds appreciated property, and little or no earnings and profits or cash, to permit liquidation without the recognition of gain by its shareholders. *See* Bittker & Eustice, *Federal Income Taxation of Corporations and Shareholders* ¶ 11.20 (3d ed. 1971). Under

that section liquidation must be pursuant to a plan meeting special requirements of the Code, carried out within one calendar month. For noncorporate shareholders, if there is gain, it is recognized and treated as a dividend to the extent of the shareholder's ratable share of the corporation's earnings and profits, and as capital gain for so much of the remainder of the gain as is not in excess of the cash and the value of the securities distributed to him.

depreciation or by reducing the capital gain (or increasing the loss) when the asset is sold. If an expense is capital, it cannot be deducted as "ordinary and necessary," either as a business expense under § 162 of the Code or as an expense of "management, conservation, or maintenance" under § 212.

It has long been recognized, as a general matter, that costs incurred in the acquisition or disposition of a capital asset are to be treated as capital expenditures. The most familiar example of such treatment is the capitalization of brokerage fees for the sale or purchase of securities, . . . (Footnotes omitted.)

It became apparent that under that state of the law there would be a difference in the net realizable distribution to a shareholder in liquidation, if corporate assets were to be sold, when the sale was by the corporation prior to distribution rather than by the shareholders after they received the assets through an in kind distribution. This was confirmed in two well-known cases. In *Commissioner of Internal Revenue v. Court Holding Co.*, 324 U.S. 331, 65 S.Ct. 707, 89 L.Ed. 981 (1945), after the corporation had made an oral agreement to sell its major assets and the large tax which would be levied at the corporate level was brought to the parties' attention, the assets were distributed in kind to shareholders in complete liquidation of the corporation, and the individuals then sold the assets to the same party upon the terms and conditions previously agreed to. This was held to be a sale consummated by the corporation prior to the liquidation, requiring a tax to be levied at the corporate level.

A few years later in *United States v. Cumberland Pub. Ser. Co.*, 338 U.S. 451, 70 S.Ct. 280, 94 L.Ed. 251 (1950), the problem apparently was recognized earlier, and the distribution in kind to the shareholders followed by a sale by the shareholders to parties who had previously had contact with the corporation was held not to require a tax to be levied at the corporate level. Whether the corporation made the sale before the distribution in kind was treated as a factual question.

These two cases were considered to illustrate an inequitable difference in treatment, which too often depended upon whether the parties had good tax advice early enough. Section 337 was inserted into the Code in the 1954 revision to eliminate this distinction if the requirements of the Section were followed.

The Committee reports acknowledged this purpose:

Section 333 [now Section 337] incorporates in the bill rules for treatment of the problem raised in the decisions of *Commissioner v. Court Holding Company* (324 U. S. 331, 65 S.Ct. 707) and *U. S. v. Cumberland Public Service Co.* (338 U.S. 451, 70 S.Ct. 280) and the numerous related cases. These decisions concern the question of whether the corporation or a shareholder effected a sale of property in connection with a liquidation. Under the decision in the *Cumberland Public Service Co.* case, supra, it is indicated that in the case of an actual distribution in liquidation of the corporation prior to an actual sale by the shareholders a single tax imposed [sic] at the shareholder level. Accordingly, under present law, the tax consequences arising from sales made in the course of liquidation depend primarily upon the formal manner in which transactions are arranged. The possibility that double taxation may occur in such cases results in causing the problem to be a trap for the unwary.

Your committee intends in section 333 [337] to provide a definitive rule which will eliminate any uncertainty.

H.R.Rep.No.1337, 83d Cong., 2d Sess. 38–39 A106 (1954), reprinted in [1954] U.S.Code Cong. & Admin.News, p. 4244.

Section 337(a), as applicable here, provided:

(a) GENERAL RULE—If—

(1) a corporation adopts a plan of complete liquidation on or after June 22, 1954, and

(2) within the 12-month period beginning on the date of the adoption of such plan, all of the assets of the corporation

are distributed in complete liquidation, less assets retained to meet claims,

then no gain or loss shall be recognized to such corporation from the sale or exchange by it of property within such 12-month period.

We are convinced that the purpose of Section 337 was to eliminate the distinctions between the tax treatment when a corporation sells after the adoption of the 12-month plan of liquidation and where the shareholders sell after receiving the property in kind. It is clear that if distribution were made in kind and the shareholders should then sell, the rule of *Woodward v. United States, supra*, would be applicable and the selling expenses would be capital expenditures offset against the gain on the sale. If we treat such items as ordinary expenses of liquidation fully deductible against ordinary income on the corporation's tax return, there is a difference in tax treatment in the two situations. We have perpetuated a dependence upon good tax advice, put a premium upon recognizing the problem early, and gone contrary to what we believe were the purposes of the legislation.

Taxpayer here makes the point that if the expense of distributing assets in kind are deductible to the corporation, denial of deduction for expenses attributable to assets that are sold will create a disparity between §§ 336 and 337. We recognize that liquidation expenses, in the form of accounting and legal fees particularly, may be greater when distribution of substantial assets are made in kind than where most or all of what is left is cash, after sale of the other assets. But we think the difference will normally be slight in comparison to broker's commissions, legal and accounting fees incurred upon a sale of the major assets. In any event, the fact that perfect equality is not possible is no reason for creating additional differences.

We see nothing in the fact that § 1245 assets are involved in this case, requiring treatment of some gain as ordinary income at the corporate level, to influence us to a different result. Such assets were involved in *Lanrao, Inc. v. United States, supra.* A determination will have to be made by the trial court of the sales expense attributable to the § 1245 assets, and as a result of that determination some of such expenses may have the tax effect of offsetting ordinary income, by reducing the net sales price below the recomputed basis of such items.

## II

The argument is made that if *Mountain States* is overruled, as we do in this opinion, its application should be prospective only. Heavy reliance is placed upon the reasoning of the dissent in *Of Course, Inc. v. Commissioner of Internal Revenue*, 499 F.2d 754, 760 (4th Cir. 1974). Judge Boreman there gives several reasons for the unfairness of retroactive application. Those which we think have some merit include: the fact the government can consider the issue still open despite a circuit decision to the contrary gives it leverage usable against the taxpayer in negotiations; a financial burden is imposed upon a taxpayer who might have to defend in court against an attempt by the government to obtain a decision overruling the earlier precedent; and, it is unfair to change the rules after parties have acted in reliance upon the prior decision.

The provisions of the Civil Rights Attorney's Fees Awards Act of 1976, P.L. 94–559, 90 Stat. 2641, providing that the courts may allow prevailing defendants in tax cases attorney's fees as part of the costs incurred in certain cases, appears to be a beginning attempt to penalize oppressive government action which imposes unreasonable expense upon a taxpayer.

We note that Benedict did not rely upon this Court's decision in *Mountain States* in its Section 337 plan of liquidation, which was adopted June 21, 1965, with its tax return filed (reporting the expenses at issue here as capital in nature) on March 15, 1966, prior to our decision of August 12, 1966. By the time an application for refund was made two other circuits had disagreed with our opinion, and taxpayer knew or should have known that the Internal Revenue Service was challenging our interpretation of the statute. Had the Supreme Court granted certiorari in any of the cases and pro-

nounced the law to be contrary to our prior decision, the decision would have been applicable to the taxpayers here before us.

 The general rule, of course, is that retroactive effect is given to decisions overruling a prior holding. As stated by this Court in *Sunray Oil Co. v. Commissioner of Internal Revenue*, 147 F.2d 962, 963–964 (10th Cir.), *cert. denied*, 325 U.S. 861, 65 S.Ct. 1201, 89 L.Ed. 1982 (1945):

> There is no vested right in the decisions of a court and a change of decision does not deprive one of equal protection of the laws or property without due process of law. It is a general rule that the decision of the highest appellate court of a jurisdiction overruling a former decision is retrospective in its operation. In effect, it declares that the former decision never was law. (Footnotes omitted.)

*See also, Massaglia v. Commissioner of Internal Revenue*, 286 F.2d 258 (10th Cir. 1961).

We are cited no decision of the United States Supreme Court or of the courts of appeals, nor have we found any, which gave prospective effect only when an income tax decision was overruled. The Supreme Court has expressly held that the Commissioner may apply retroactively, against a person claiming to have acted in reliance, a reversal of his own ruling interpreting the tax law. *Dixon v. United States*, 381 U.S. 68, 85 S.Ct. 1301, 14 L.Ed.2d 223 (1965).

In a case involving the validity of a tax lien, the purchaser of property claimed to have failed to search for notices on the basis of a court of appeals decision in his circuit found to be erroneous by the Supreme Court. The Court held against him stating:

> Acts of Congress are generally to be applied uniformly throughout the country from the date of their effectiveness onward. Generally the United States, like other parties, is entitled to adhere to what it believes to be the correct interpretation of a statute, and to reap the benefits of that adherence if it proves to be correct, except where bound to the contrary by a final judgment in a particular case. Deviant rulings by circuit courts of appeals, particularly in apparent dictum, cannot generally provide the "justified reliance" necessary to warrant withholding retroactive application of a decision construing a statute as Congress intended it. In rare cases, decisions construing federal statutes might be denied full retroactive effect, as for instance where this Court overrules its own construction of a statute, cf. *Simpson v. Union Oil Co.*, 377 U.S. 13, 25 [84 S.Ct. 1051, 1059, 12 L.Ed.2d 98] (1964) but this is not such a case.

*United States v. Estate of Donnelly*, 397 U.S. 286, 294–295, 90 S.Ct. 1033, 1038, 25 L.Ed.2d 312 (1970).

 The tests to be met for nonretroactivity application have been pronounced in *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). Neither this taxpayer's filing of a refund claim based upon our prior decision, nor the reliance of others who may have hoped for the same result in Section 337 liquidations adopted after *Mountain States*, presents such a compelling situation as to satisfy those standards.

The decision of the district court is reversed, and the case is remanded for further proceedings consistent with this opinion.