**Abraham WINER et al., Petitioners,**

**v.**

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 6782.**

United States Court of Appeals
First Circuit.

Jan. 10, 1967.

Phil David Fine, Boston, Mass., with whom Alan M. Edelstein, Boston, Mass., was on the brief, for petitioners.

Howard J. Feldman, Atty., Dept. of Justice, with whom Mitchell Rogovin, Asst. Atty. Gen., and Lee A. Jackson and

Melva M. Graney, Washington, D. C., Attys., were on the brief, for respondent.

Before ALDRICH, Chief Judge, and McENTEE and COFFIN, Circuit Judges.

COFFIN, Circuit Judge.

■ The principal question posed by this petition for review is whether a corporation, which disposes of its inventory, pursuant to a plan of liquidation, in a non-taxable bulk sale under section 337 of the Internal Revenue Code,[1] can compute its cost of goods sold for income tax purposes on the assumption that ending inventory for the year of the bulk sale is zero. To put the question in terms of legal result: can section 337, which is devised to eliminate double taxation in the event of sale of a corporation's property and distribution of the proceeds to shareholders in liquidation of the corporation, also be used to reduce the corporation's income tax by diminishing gross income in an amount equal to the final inventory at the date of sale? We agree with the Tax Court that it cannot.

The accrual basis corporate taxpayer adopted a plan of complete liquidation on November 17, 1959. On November 20, 1959, all assets were sold to a corporate buyer who intended to carry on the same business. The price allocable to ending inventory, valued according to methods set forth in the agreement of sale, was $55,007. All net proceeds of the sale were distributed to Winer, the sole stockholder.[2] No gain was taxed to the selling corporation.

On June 30, 1960, the end of its fiscal year, the selling corporation in its tax returns computed its cost of goods sold on the basis of an ending inventory of no value. On Schedule D, "Gain or Loss From the Sale or Exchange of Property", an informational entry was made, listing a cost basis of zero and a selling price of $55,007 for the bulk sale of inventory.

The Commissioner found that the cost of goods sold for the year ending June 30, 1960, was overstated by $55,007; the Tax Court sustained the finding and entered decision against both taxpayer corporation and Winer as transferee in the amount of $28,258.90.

Petitioner argues that both the language of the statute and legislative intent support its position that the nonrecognition provision of section 337 enables a bulk sale of inventory to be used to reduce *pro tanto* the cost of goods sold.

1. 26 U.S.C. § 337. GAIN OR LOSS ON SALES OR EXCHANGES IN CONNECTION WITH CERTAIN LIQUIDATIONS:

"(a) *General Rule.*—If—

"(1) a corporation adopts a plan of complete liquidation on or after June 22, 1954, and

"(2) within the 12-month period beginning on the date of the adoption of such plan, all of the assets of the corporation are distributed in complete liquidation, less assets retained to meet claims,

then no gain or loss shall be recognized to such corporation from the sale or exchange by it of property within such 12-month period.

"(b) *Property Defined.*—

"(1) *In general.*—For purposes of subsection (a), the term 'property' does not include—

"(A) stock in trade of the corporation, or other property of a kind which would properly be included in the inventory of the corporation if on hand at the close of the taxable year, and property held by the corporation primarily for sale to customers in the ordinary course of its trade or business, * * *.

"(2) *Nonrecognition with respect to inventory in certain cases.*—Notwithstanding paragraph (1) of this subsection, if substantially all of the property described in subparagraph (A) of such paragraph (1) which is attributable to a trade or business of the corporation is, in accordance with this section, sold or exchanged to one person in one transaction, then for purposes of subsection (a) the term 'property' includes—

"(A) such property so sold or exchanged, and * * *."

2. The parties agree that Winer is liable as transferee for any deficiency correctly assessed to the corporation.

■ We do not read section 337 as suggesting this result. The legislative purpose was to remove the imposition of tax at both corporation and shareholder levels in the event of a sale made by a corporation in connection with its liquidation. This would achieve the same tax result as if the corporation first distributed its property to shareholders and they then effected the sale. S.Rep.No. 1622, 83d Cong., 2d Sess. 258, 259 (1954), U.S.Code Cong. and Admin.News 1954, p. 4629.

Both the Senate and the House reports recognized that the statute was intended to have no impact on the tax consequences of corporate operations apart from liquidation. The Senate report stated: "It is intended that, during the 12-month period, sales in the ordinary course of business shall result in ordinary gain to the corporation as if the corporation were not in the process of liquidating." It stated further that "the bulk sale * * * [of inventory sold to one person concerning which no gain or loss shall be recognized] will ordinarily be the last sale made by the corporation of its inventory." S.Rep. No. 1622, supra, at 259, U.S.Code Cong. and Admin.News 1954, p. 4897. Were such last sale to be allowed to wipe out inventory, thus increasing the cost of goods sold and decreasing the net income from sales, the objective expressed by the first sentence quoted above would be frustrated. See also H.R.Rep. No. 1337, 83d Cong., 2d Sess. A 106–09 (1954), U.S.Code Cong. and Admin.News 1954, p. 4025.

That there seem to be no cases of a liquidating corporation seeking to make section 337 do double duty (i. e., avoid double taxation of a sale of ending inventory and reduce costs of goods sold) is thoroughly understandable. A waiver of normal accounting practices is not so easily to be read into specific purpose tax provisions. Petitioner here seeks to use a sale on liquidation to alter the tax consequences of operations prior to liquidation, just as the government sought to do in Fribourg Navigation Co. v. Commissioner, 1966, 383 U.S. 272, 86 S.Ct. 862, 15 L.Ed.2d 751. In that case a corporate shipowner, which had depreciated its vessel to an adjusted basis of $327,000, took advantage of the demand for ships created by the Suez crisis in 1956 and sold the vessel in 1957 for nearly $700,000, in connection with a plan of complete liquidation. The corporation claimed depreciation as usual from the beginning of 1957 to the date of sale, reducing its gross income accordingly, and reported a capital gain on the difference between selling price and the adjusted basis of the ship as of the date of sale. The Commissioner took the position that the final sale ought to have retroactive impact on the corporation's cost accounting and that deduction for depreciation should be limited to the amount, if any, by which the adjusted basis of the asset at the beginning of the year exceeds the sales proceeds. The Court, in reversing lower holdings for the Commissioner, observed, "[B]y tying depreciation to sale price in this manner, the Commissioner has commingled two distinct and established concepts of tax accounting—depreciation of an asset through wear and tear or gradual expiration of useful life and fluctuations in the value of that asset through changes in price levels or market values." 383 U.S. at 276, 86 S.Ct. at 865.

Here we say, in parallel reasoning, that petitioner has commingled two distinct concepts of tax accounting—the computation of cost of goods sold in the ordinary course of business during an operating period and the computation of the gain or loss on sale in connection with complete liquidation.[3]

---

3. The commingling of concepts forced the *reductio ad absurdum* revealed by the Schedule D treatment of the bulk sale of inventory, where basis was listed as zero and sales price and gain as $55,007. Schedule D brought taxpayer face to face with its dilemma: it must either report two ending inventory figures, zero used in computing cost of goods sold and another figure for basis in Schedule D, or it must be consistent, as it was here, by using zero in both cases. But this option

Petitioner has been able to cite only one case to support its argument, Commissioner of Internal Revenue v. South Lake Farms, Inc., 9 Cir., 1963, 324 F.2d 837. In that case a farming enterprise liquidated, and the shareholders received a price which reflected a value for crops not yet harvested. Despite this "windfall", the farm was allowed to deduct the expenses which had gone into the production of the crops—which had not matured to the point of constituting income. Whatever may be the correctness of this holding, it offers no solace to petitioner, both because it stems from an unusual factual situation,[4] and because even there the court recognized the principle that a liquidating corporation's income must be so calculated as to reflect fairly operations prior to termination. Here petitioner is attempting to do precisely the reverse of this, that is, to reject a correct accounting technique because it does *not* produce a tax windfall.

Petitioner has raised a second issue, that the Tax Court erred in finding the value of closing inventory to be $55,007. The argument is based on the nature of corporation taxpayer's business as a contract filler of aerosol cans for customers with widely differing specifications as to cans, valves, caps, and the major chemical contents. Since stocks left over from particular orders were not ordi-narily usable on other work, it was the taxpayer's practice to discount them heavily or even eliminate them from inventory valuations.

The agreement of sale, however, reflected this practice, specifying that raw materials and goods in process should take into account obsolete or slow moving items and that no value should be given to finished inventory items unless covered by a firm order. The inventory was to be conducted jointly by accountants for seller and buyer, with arbitration by a third and independent accounting firm in the event of disagreement.

■ In practice it appeared that Winer insisted on everything being counted, being characterized in the testimony as a "string saver". Apparently the beginning inventory was not made available to the accountants. Not everything, however, was valued. And there was testimony not only that accounting practice in the trade was followed in evaluating inventory but that the buyer has since strictly followed the method used in the inventory at liquidation. It seems to us that Winer, to the extent that he exchanged strings for coins in an arm's-length transaction, assumed a difficult burden in attempting to prove the strings worthless. The Tax Court's conclusion that petitioner did not successfully carfy that burden is not clearly erroneous.[5]

is clearly unsatisfactory since the inventory sold had to have some value, being a composite of beginning inventory and purchases, and there being no evidence or contention that it was all obsolete and worthless.

4. The operation of a farm presents the unusual circumstance that the expenses of producing a crop—plowing, planting, and so on—are normally incurred at one time early in the season, and the income matching those expenses is usually received at one time late in the season. Since crops cannot be treated as inventory and valued before harvest, it is usual to deduct the expenses when paid and recognize the income when received, even when the taxpayer is on the accrual basis. See Treas.Reg. § 1.61–4 (1957). In *South Lake Farms* the liquidation intervened between the two events, and the court could find no statutory warrant for altering the usual accounting method.

In a manufacturing operation like that of the present taxpayer the usual accounting method commands that the deduction for cost of goods sold be taken only with respect to goods actually sold during the appropriate period.

5. Petitioner further attacks the Tax Court's conclusion by arguing that specific reasons were not assigned. We find no merit in this contention. It seems to us that the Tax Court applied proper legal principles in refusing to include in cost of goods sold the costs of goods "not used in the manufacture and sale of the goods producing the gross receipts". As to the subsidiary question of the precise valuation of cost of goods sold (specifically, the proper valuation of ending inventory), the burden of proof was on petitioner. Neither the Commissioner nor the Tax Court felt that the burden had been met.

The final issue presented is whether the Tax Court was correct in concluding that "the record does not enable the Court to make any decision with respect to the Massachusetts tax question." The government relies on Globe Tool & Die Mfg. Co., 1957, 32 T.C. 1139, 1143. In that case it was held that additional payments to be made on account of Massachusetts corporation excise taxes were not deductible as liabilities accrued in years prior to payment because all the events which fixed the taxpayer's liability under Massachusetts law had not happened. Specifically, the Massachusetts Commissioner of Taxation had not yet assessed the additional tax due. Petitioner here attempts to distinguish *Globe Tool* on the grounds that it dealt with a tax on net worth rather than income and that the present statute requiring a corporation to report a change in net income does not require the additional steps held to be necessary in that case. Both grounds are plainly specious. The corporate excise tax in Massachusetts is based on both net worth and net income, Mass.G.L. c. 63, § 32, and in *Globe Tool* the deduction claimed and refused was for the increase in the excise attributable to the increase in net income as determined by the Tax Court. The reporting statute relied upon by the taxpayer in *Globe Tool* is the same one cited by the petitioner here. Mass.G.L. c. 63, § 36. It has not been amended in any way that would impair the Tax Court's earlier interpretation.

■ Moreover, even if the additional excise tax were accruable now, its amount would depend on the corporation's net income attributable to its business in Massachusetts. Mass.G.L. c. 63, § 38A. The record does not show whether the taxpayer corporation conducted business outside Massachusetts or, if so, any facts upon which a proper allocation of income could be made. Therefore, the Tax Court was clearly correct in its precise holding that the record did not enable it to make any decision on the question. We assume that Winer will have ample opportunity to seek a refund for the state tax when it is finally assessed. See 26 U.S.C. §§ 6402, 6511.

Affirmed.