COWEN, Senior Circuit Judge.
 

 This is an appeal from a final decision of the United States Claims Court (Claims Court) granting the Government’s motion for summary judgment and dismissing the consolidated complaints in an unpublished order of September 11, 1985.
 
 [1]
 
 Appellants
 
 *290
 
 had sought a refund of Social Security (FICA) taxes and Federal Unemployment (FUTA) taxes paid for 1979 through 1982, pursuant to section 530 of the Revenue Act of 1978, Pub. L. No. 95-600, 92 Stat. 2885 (codified at 26 U.S.C. § 3401 note). The Claims Court held that appellants had not satisfied the condition for automatic relief specified in subsection 530(a)(1)(B), and therefore could not prevail as a matter of law. We affirm.
 

 Background
 

 Qualified Personnel, a sole proprietorship owned and operated by Lacy M. Henry (Henry), commenced business in January 1974. In 1979, Henry incorporated Qualified Maintenance and Construction Personnel, Inc., a North Carolina corporation, successor to Qualified Personnel. Henry owned all outstanding and issued capital stock of the corporation during its existence.
 

 Qualified was a labor broker. Third-party clients in need of skilled and semi-skilled workers contracted with, and paid fees to, Qualified for locating and assembling crews of workers. Qualified paid the workers out of fees paid by the client, and the client supervised the activities of the workers. The longstanding practice of a significant segment of the temporary labor industry had been to treat temporary workers as independent contractors, not as employees.
 

 In April 1974, an Internal Revenue Service (IRS) representative informed Qualified that it need not pay FICA or FUTA payroll taxes on the workers it brokered, because they were independent contractors. For all quarters of 1974, and the first two quarters of 1975, Qualified did not pay FICA or FUTA taxes, but filed Forms 1099, treating the workers as independent contractors, in reliance on the representations of the IRS and the long-standing practice of the industry.
 

 In mid-1975, the IRS conducted a payroll tax audit of the records of Qualified, reclassified as employees the workers Qualified brokered, and assessed payroll taxes against the taxpayers for all quarters of 1974 and the first two quarters of 1975. Because the failure to pay the taxes was in reliance on earlier statements of the IRS, it imposed no penalty. After the second quarter of 1975, until the quarter ended June 30, 1982 (when Qualified ceased doing business and sold its assets), Qualified paid FICA and FUTA taxes with respect to the workers it brokered, solely because of the position taken by the IRS during the 1975 payroll taxes audit. Notices from the IRS requiring Qualified to withhold employees’ income and FICA taxes for those workers reinforced the need to pay the taxes.
 

 As a result of the enactment of section 530 of the Revenue Act of 1978, Qualified filed claims for refund of the FICA and FUTA taxes paid for the quarters ended March 31, 1974, to June 30, 1982. A claim for refund was allowed for payroll taxes paid by Qualified for all quarters of 1974 and the first two quarters of 1975. The claims for refund for all other periods were disallowed.
 

 Qualified filed three complaints in the Claims Court seeking refund of the payroll taxes it had paid for the periods which had been disallowed. The first complaint covered taxes Qualified paid for the quarters ended September 30, 1975 to June 30, 1979. The complaint is presently pending before Judge Seto (Claims Court No. 104-83T), on remand from this court. (Fed.Cir. No. 84-1596, slip op. April 22, 1985). In one of the two complaints involved in this appeal, Qualified seeks a refund of the FICA taxes paid for the quarters ended September 30, and December 31, 1979, and FUTA taxes paid for the calendar year 1979. In the other complaint, Qualified seeks a refund of the FICA taxes paid for the quarters ended March 31, 1980 through June 30, 1982, and FUTA taxes paid for the calendar years 1980 and 1981.
 

 
 *291
 
 In the Claims Court, the Government moved for summary judgment on the ground that Qualified was not entitled to recover, because it had failed to satisfy the requirements of subsection 530(a)(1)(B) for all tax periods after December 31, 1978. Qualified answered the contention by asserting that the decision in
 
 Ridgewell’s, Inc. v. United States,
 
 228 Ct.Cl. 393, 655 F.2d 1098 (1981) required the Claims Court to hold in its favor.
 

 In its initial decision of June 21,1985, the Claims Court agreed with Qualified and granted its cross-motion for summary judgment. On reconsideration, however, the court vacated its original order, granted the Government’s motion for summary judgment, and dismissed the complaints on the basis of its holding that the reasoning of
 
 Ridgewell’s
 
 was confined to controversies involving tax periods prior to December 31, 1978. Consequently, the Claims Court found that Qualified had not satisfied the condition entitling it to the automatic relief specified in subsection 530(a)(1)(B) of the Revenue Act of 1978.
 

 Discussion
 

 I.
 

 As previously indicated, the governing statute in this case is section 530 of the Revenue Act of 1978, which provides as follows:
 

 SEC. 530. CONTROVERSIES INVOLVING WHETHER INDIVIDUALS ARE EMPLOYEES FOR PURPOSES OF THE EMPLOYMENT TAXES.
 

 (a) TERMINATION OF CERTAIN EMPLOYMENT TAX LIABILITY (1) IN GENERAL. —If—
 

 (A) for purposes of employment taxes, the taxpayer did not treat an individual as an employee for any period, and
 

 (B) in the case of periods after December 31, 1978, all Federal tax returns (including information returns) required to be filed by the taxpayer with respect to such individual for such period are filed on a basis consistent with the taxpayer’s treatment of such individual as not being an employee, then, for purposes of applying such taxes for such period with respect to the taxpayer, the individual shall be deemed not to be an employee unless the taxpayer had no reasonable basis for not treating such individual as an employee.
 

 Resolution of the issues presented in this case requires us to determine the meaning and application of subsection 530(a)(1)(B), and for that purpose we begin with the language of the statute. As the Supreme Court declared in
 
 Hanover Bank v. Commissioner,
 
 369 U.S. 672, 687, 82 S.Ct. 1080, 1088, 8 L.Ed.2d 187 (1962), “the words of statutes—including revenue acts—should be interpreted where possible in the ordinary, everyday senses.” Moreover, where “the requirements of the [statute] are detailed and specific, * * * [they] must be applied with precision.”
 
 Commissioner v. Gordon,
 
 391 U.S. 83, 91-92, 88 S.Ct. 1517, 1522-23, 20 L.Ed.2d 448 (1968).
 

 As we read it, the subsection provides in clear and unambiguous language that in order to qualify for the automatic relief specified therein, the taxpayer is required to file all federal tax returns, including information returns (Form 1099), for the periods after December 31,1978, on a basis which is consistent with the taxpayer’s treatment of each worker as an independent contractor, rather than as an employee.
 

 Throughout the period involved in this suit, the taxpayers consistently filed unemployment tax returns on which they reported compensation paid to their workers as wages for employees. Also, as the Claims Court found, they made quarterly deposits of the FICA and FUTA taxes due. They never filed information returns (Form 1099), required for compensation paid to independent contractors. There was no statement in any of their claims for refund that their tax returns had been filed on a basis consistent with the treatment of the workers as independent contractors, rather than as employees. The only ground for
 
 *292
 
 relief which was set forth in each of the claims for refund stated that the claim was based upon “Public Law 95-600, section 530 of the Revenue Act of 1978.” Therefore, we affirm the decision of the Claims Court on the ground that Qualified’s right to recover is precluded by the plain language of the applicable statute.
 

 II.
 

 Qualified’s principal argument in this appeal is that adherence to the decision in
 
 Ridgewell’s, supra,
 
 requires reversal of the decision of the Claims Court and a holding in accord with that court’s initial order of June 21, 1985. Qualified asserts that its situation is exactly the same as that of the taxpayer in
 
 Ridgewell’s,
 
 in that as a result of an audit in 1975 by IRS Qualified was directed to file and did file the required employer’s monthly Federal tax returns and quarterly deposited the amount of employment taxes shown to be due. This practice continued until the quarter ended June 30, 1982, when Qualified ceased doing business. Qualified also maintains that the word “treatment” in subsection 530(a)(1)(B) should be construed in the same manner as the court interpreted the word “treat” in subsection 530(a)(1)(A).
 

 There are several reasons why we find that Qualified’s analysis is erroneous. We quote from two statements of the opinion which we think demonstrate Qualified’s misconception of the holding in
 
 Ridge-well’s.
 
 In the first of these the court said:
 

 Where reclassification by IRS has occurred, so long as the statute of limitations has not run as to particular periods, the taxpayer may sue for refund.
 
 Until that time, the controversy is alive for purposes of negating “treatment” under section 530(a)(1)(A).
 

 655 F.2d 1104. (Emphasis supplied).
 

 Although taxpayer relies heavily on this statement, it is apparent that it applies only to subsection 530(a)(1)(A) and not to subsection 530(a)(1)(B), with which this appeal is concerned.
 

 The second statement which we quote from
 
 Ridgewell’s
 
 was made in connection with the court’s rejection of the Government contention, based on S.Rep. No. 95-1263, 95th Cong., 2d Sess. 210 (1978),
 
 reprinted in
 
 [1978] U.S. Code Cong. & Ad. News 6761, 6973. In explaining the difference between subsection 530(a)(1)(A) and subsection 530(a)(1)(B), the court stated:
 

 Defendant apparently offers this to show that plaintiff cannot meet the “treatment” requirement because the above paragraph indicates that the taxpayer must file
 
 all
 
 federal tax returns on a basis consistent with the taxpayer’s treatment of the individuals as independent contractors. However, this legislative history must be viewed in light of the bill it was commenting on which differed materially from section 530 as enacted. The bill addressed was H.R. 13511, 95th Cong., 2d Sess. § 501 (1978). That earlier version of section 530 had a requirement that
 
 all
 
 federal tax returns be filed on a basis consistent with the taxpayer’s treatment of an individual as an independent contractor in order to be entitled to relief.
 
 In section 530 this requirement has been relaxed to apply only to periods after December 31,1978.
 
 This legislative history from the Senate Report, therefore, is no longer accurate when applied to section 530 as enacted. (Emphasis supplied.)
 

 655 F.2d at 1104.
 

 The whole thrust of the opinion in
 
 Ridge-well’s
 
 is directed toward an interpretation of subsection 530(a)(1)(A) for the purpose of determining the relief to which that taxpayer was entitled for employment taxes paid for its waiters from 1974 until December 31, 1978.
 

 As the Claims Court correctly observed, Qualified’s construction of
 
 Ridgewell’s
 
 would, where the workers had been reclassified by the IRS, permit a taxpayer to sue for a refund of employment taxes paid, so long as the statute of limitations has not run for particular periods. The court below also noted that such a result would
 
 *293
 
 permit a taxpayer in Qualified’s situation, to postpone the initiation of a refund action until the present time, and would mean that taxpayers’ refund claims for periods after December 1978, would be assessed under subsection 530(a)(1)(B) “by the less-stringent criterion for relief specified for tax periods occurring prior to December 31, 1978,
 
 i.e.,
 
 by the criterion specified in section 530(a)(1)(A).” Since the result advocated by Qualified was not intended in
 
 Ridgewell’s,
 
 we agree with the determination of the Claims Court that the reasoning in that case is limited to controversies involving tax periods prior to December 31, 1978.
 
 [2]
 

 III.
 

 Our holding in Part I as to the plain meaning of subsection 530(a)(1)(B), eliminates the need to resort to the legislative history.
 
 Rubin v. United States,
 
 449 U.S. 424, 430, 101 S.Ct. 698, 701, 66 L.Ed.2d 633 (1981). “Where the language is plain and admits of no more than one meaning the duty of interpretation does not arise and the rules which are to aid doubtful meanings need no discussion.”
 
 Caminetti v. United States,
 
 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1916).
 

 However, both parties have attempted to buttress their positions by citing statements from the reports of Congressional committees and other sources. The Claims Court did not refer to or discuss the legislative history, probably because the principal, if not the only issue, clearly presented to that court was the applicability of the decision in
 
 Ridgewell’s.
 
 Consequently, we have carefully reviewed and considered the historical material submitted by the parties. As a result, we find that the legislative history, when considered as a whole, is not only consistent with, but supports our conclusion in Part I.
 

 AFFIRMED.
 

 [1]
 

 . Appellants were predecessor/successor businesses, both of which were, at all relevant times, owned and operated by Lacy M. Henry. The Claims Court consolidated the two cases, be
 
 *290
 
 cause they presented common questions of law and fact. For convenience, both taxpayers are generally referred to in this opinion as “Qualified” or "taxpayer(s)."
 

 [2]
 

 . Two of the judges who participated in the decision in
 
 Ridgewell’s
 
 are members of the panel in this case,