**ECKERD CORPORATION and Consolidated Subsidiaries, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 95–733T.

United States Court of Federal Claims.

May 6, 1997.

James V. Bitonti, McLean, VA, for plaintiff. L. Paige Marvel, Venable, Baetjer & Howard, L.L.P., of counsel.

Mary M. Abate, Washington, DC, with whom was Assistant Attorney General Loretta C. Argrett, for defendant. Mildred L. Seidman, Chief, Court of Federal Claims Section, Tax Division, of counsel.

## OPINION

MILLER, Judge.

This matter is before the court after argument on the parties' cross-motions for partial summary judgment. Eckerd Corporation and Consolidated Subsidiaries ("plaintiff") seeks a refund of income tax paid for tax year 1986. The issue is whether the parent of an affiliated group of corporations, upon the deemed sale of the assets of the parent and its subsidiaries to an unrelated corporation, must restore to income gain from an intercompany transaction between subsidiaries of the parent that previously was recognized, but deferred.

## FACTS

This case involves the sale of inventory between certain subsidiaries of the Jack Eckerd Corporation and the subsequent sale of the stock of the Jack Eckerd Corporation affiliated group to Eckerd Holdings, Inc. The Jack Eckerd Corporation was the common parent of an affiliated group of corporations that filed consolidated federal income tax returns. The affiliated group consisted of the Jack Eckerd Corporation and 34 first-tier, wholly-owned subsidiary corporations.

Sometime prior to April 30, 1986, certain subsidiaries of the Jack Eckerd Corporation affiliated group sold warehouse inventory items to other members of the group for resale in their stores. On April 30, 1986, Eckerd Holdings, Inc., an unrelated corporation, purchased 100% of the stock of the Jack Eckerd Corporation affiliated group for $1,184,642,151.00. As a result of the stock purchase, the Jack Eckerd Corporation ("Old JEC") affiliated group merged into Eckerd Holdings, and Eckerd Holdings changed its name to the Jack Eckerd Corporation ("New JEC").[1] The Old JEC affiliated group filed its final consolidated income tax return on January 14, 1987. This consolidated return, covering the period from August 4, 1985, through April 30, 1986, reported deferred gains of $15,426,075.00 arising from the earlier sales of inventory between members of the Old JEC affiliated group. On January 14, New JEC also filed an election, pursuant to section 338(g) of the 1954 Internal Revenue Code, 26 U.S.C. (I.R.C.) § 338(g) (1982),[2] to treat the sale of the Old JEC affiliated group's stock as a deemed sale of the Old JEC affiliated group's assets.

On August 1, 1991, plaintiff filed an informal refund claim with the Internal Revenue Service (the "IRS"), contending that it erroneously reported as taxable income the gain resulting from the intercompany sale of inventory between certain members of the Old JEC affiliated group. When the examining agent disallowed the informal claim, plaintiff appealed. The IRS Appeals Division sustained the agent's denial of the informal refund claim. Plaintiff then filed a claim for refund with the IRS on December 28, 1994,

---

1. To prevent the confusion of corporate names, the court refers to the original Jack Eckerd Corporation affiliated group as the "Old JEC affiliated group" and the current Jack Eckerd Corporation as the "New JEC."

2. *See* note 6 *infra*.

which subsequently was disallowed. Plaintiff filed this suit in the Court of Federal Claims on November 6, 1995.

## DISCUSSION

1. *The deferred intercompany transaction*

I.R.C. § 1501 permits an affiliated group of corporations to file a consolidated tax return in lieu of separate returns. To qualify for the privilege of filing a consolidated return, all members of the affiliated group must consent to the consolidated return regulations. The advantages of filing a consolidated return have been described, as follows:

> 1) deferral of gain on intercompany transactions; 2) offsetting gains and losses; 3) tax-free intercompany dividends; 4) greater utilization of NOL and capital loss carryovers; 5) greater utilization of unused investment credits; 6) greater utilization of excess charitable contribution deductions; 7) reduction in gain on sale of a subsidiary; 8) minimizing the minimum tax.

*Wolter Constr. Co., Inc. v. Commissioner,* 634 F.2d 1029, 1031 n. 1 (6th Cir.1980) (citation omitted).

The Internal Revenue Code does not provide specific rules for calculating the tax liability of affiliated groups filing consolidated returns. Instead, Congress directed the Secretary of the Treasury to prescribe regulations for this purpose: ·

> The Secretary shall prescribe such regulations as he may deem necessary in order that the tax liability of any affiliated group of corporations making a consolidated return and of each corporation in the group, both during and after the period of affiliation, may be returned, determined, computed, assessed, collected, and adjusted, in such manner as clearly to reflect the income-tax liability and the various factors necessary for the determination of such liability, and in order to prevent avoidance of such tax liability.

I.R.C. § 1502. I.R.C. § 1503(a) states that "[i]n any case in which a consolidated return is made or is required to be made, the tax shall be determined, computed, assessed, collected, and adjusted in accordance with the regulations under section 1502 prescribed before the last day prescribed by law for the filing of such return." [3]

As a general rule, the taxable income of a member of an affiliated group that files a consolidated return is computed separately from that of the other members of the affiliated group. Treas. Reg. § 1.1502–12 (1966). The regulations create an exception to this rule for certain types of transactions, known as "deferred intercompany transactions," between members of an affiliated group. Treas. Reg. § 1.1502–13(c)(1)(i). An intercompany transaction is "a transaction during a consolidated return year between corporations which are members of the same group immediately after such transaction." Treas. Reg. § 1.1502–13(a)(1)(i). A deferred intercompany transaction is

(i) The sale or exchange of property,

(ii) The performance of services in a case where the amount of the expenditure for such services is capitalized (for example, a builder's fee, architect's fee, or other similar cost which is included in the basis of the property), or

(iii) Any other expenditure in a case where the amount of the expenditure is capitalized (for example, prepaid rent, or interest which is included in the basis of the property); in an intercompany transaction.

Treas. Reg. § 1.1502–13(a)(2).

When a transaction between members of an affiliated group meets the definition of a deferred intercompany transaction, the selling member defers payment of gain or loss recognized as a result of the transaction: "(i) To the extent gain or loss on a deferred intercompany transaction is recognized under the Code for a consolidated return year, such

**3.** In 1995 the Secretary of the Treasury revised the consolidated return regulations. These changes are not pertinent to the case at bar because the tax year at issue predates the Secretary's revisions. The court therefore applies the consolidated return regulations promulgated in 1966 and effective through 1995.

gain or loss shall be deferred by the selling member (hereinafter referred to as 'deferred gain or loss')." [4] Treas. Reg. § 1.1502–13(c)(1).

The deferral provision of the consolidated return regulations does not constitute an exception to the general recognition rule of I.R.C. § 1001(c). I.R.C. § 1001(c) provides that "[e]xcept as otherwise provided in this subtitle, the entire amount of the gain or loss, determined under this section, on the sale or exchange of property shall be recognized." When a member of a consolidated group sells property in a deferred intercompany transaction, the member recognizes gain or loss at the time of the sale but defers the reporting of the recognized gain or loss. "Gain or loss on deferred intercompany transactions is recognized, deferred, and ultimately restored." Fred W. Peel, Jr., et al., Consolidated Tax Returns § 13.03 (3d ed.

1991 & Supp.1997); see Boris I. Bittker & James E. Eustice, Federal Income Taxation of Corporations and Shareholders ¶ 15.23 (4th ed. 1979) ("[T]he 1966 regulations adopted a 'deferral' or 'suspense account' approach whereunder intercompany profits and losses are deferred by recording them in a 'suspense account' until the later happening of certain specified events.").

■ The sale of inventory by certain members of the Old JEC affiliated group to other members of the group constituted a deferred intercompany transaction. Both the selling and purchasing corporations were members of the Old JEC affiliated group immediately after the transaction, and the sale of inventory was a sale of "property." [5] Accordingly, the selling subsidiaries were required to defer payment of tax on the gain recognized from the sale of the inventory.

---

**4.** Prior to 1966 the regulations accounted for the gain arising from an intercompany transaction by giving the purchasing member a carryover basis, rather than a cost basis, in the subject property. When the purchasing member disposed of the property, the purchasing member paid tax on the gain resulting from the sale between the selling member and the purchasing member. This system was referred to as a "gain elimination system" because the selling member did not recognize gain from the intercompany transaction. The Secretary revised the regulations in 1966

because the gain elimination system resulted in certain gain escaping tax, being recognized by the wrong member of the group at the wrong time, and being characterized improperly. Further, the earnings and profits of the members were not properly reflected.

The deferral mechanism was adopted to fix more accurately the location, character and source of the gain or loss on transactions between members. It generally was not intended to affect the group's overall income or loss (or other tax consequences) either while the transferred property remains in the group or after the property is disposed of outside the group.

T.D. 8295, 1990–1 C.B. 165, 165–166.

**5.** In its Statement of Genuine Issues, plaintiff contends that the transfer of inventory between members of the Old JEC affiliated group constituted neither a sale nor a deferred intercompany transaction:

DPF No. 3. Plaintiff disputes that various members of the Old JEC group sold property to other members of the Old JEC Group. Rather, Plaintiff asserts that no sale or ex-

change took place since: (i) title to the subject property never left the parent company; (ii) all of the benefits and burdens of ownership of the subject property remained with the parent company; (iii) all loans using the subject inventory as collateral were made to the parent; and (if) all risk of loss associated with the subject property rested with the parent.

Plf's Br. filed Dec. 5, 1996, at 2.

This contention is inconsistent with the facts set forth in plaintiff's December 28, 1994 refund claim to the IRS: "Set forth below is [sic] taxpayer's positions as to why the DITS [deferred intercompany transactions], in the amount $15,-426,075, resulting from warehouse sales from one member to retail stores of another, should not have been restored and taken into income as a result of the sale of stock of JEC to EH on May 1, 1986." (Emphasis added.) Under the doctrine of variance, "this court lacks jurisdiction to consider a ground for recovery not set forth in the claim for refund." Neptune Mut. Ass'n. Ltd. of Bermuda v. United States, 13 Cl.Ct. 309, 321(1987) (citing United States v. Felt & Tarrant Mfg. Co., 283 U.S. 269, 51 S.Ct. 376, 75 L.Ed. 1025 (1931), and Union Pac. R.R. v. United States, 182 Ct. Cl. 103, 389 F.2d 437 (1968)), aff'd in part and vacated in part, 862 F.2d 1546 (Fed.Cir.1988). Plaintiff's refund claim did not assert that the transfer of inventory between members of the Old JEC affiliated group did not constitute a sale or a deferred intercompany transaction. Rather, the refund claim argued that, given the application of I.R.C. § 337, plaintiff was not required to restore to income the gain recognized from the deferred intercompany transaction. The court therefore cannot consider plaintiff's new theory of recovery.

2. *Restoration of the gain from deferred intercompany transaction; interrelationship between I.R.C. §§ 338 and 337 and Consolidated Return Regulations*

The consolidated return regulations contain rules for restoring the previously recognized, but deferred, gain to income at an appropriate time:

The remaining balance ... of the deferred gain or loss attributable to property, services, or other expenditure shall be taken into account by the selling member as of the earliest of the following dates:

(i) The date on which such property is disposed of outside the group ...;

(ii) In the case of a transaction described in paragraph (e)(2) of this section, the date on which the installment debt is written off, satisfied, discharged, or disposed of outside the group or the property sold is repossessed ..., whichever is earliest;

(iii) Immediately preceding the time when either the selling member or the member which owns the property ceases to be a member of the group;

(iv) In the case of property which is stock in trade or other property of a kind which would be properly included in inventory of the member which owns the property if on hand at the close of such member's taxable year ..., the first day of the first separate return year of the selling member or the member which owns the property;

(v) In the case of an obligation (other than all obligation of a member of the group), the date on which such obligation is satisfied or becomes worthless;

(vi) In the case of stock, the date on which such stock is redeemed ... or becomes worthless;

(vii) If the consolidated returns are filed by the group for fewer than three consecutive taxable years immediately preceding a separate return year of the common parent, the first day of such separate return year; or

(viii) In the case of inventory, the date on which its value is written down to market ... but only to the extent of such write-down.

Treas. Reg. § 1.1502–13(f)(1).

■ The dispute between the parties centers on when, if ever, the Old JEC affiliated group was required to restore to income the gain recognized from the deferred intercompany transaction. On April 30, 1986, New JEC purchased 100% of the stock of the Old JEC affiliated group. Pursuant to I.R.C. § 338, New JEC elected to treat the purchase of the Old JEC affiliated group's stock as an asset purchase. Section 338(a) provides, in pertinent part:

(a) General Rule—For purposes of this subtitle, if a purchasing corporation makes an election under this section (or is treated under subsection (e) as having made such an election), then, in the case of any qualified stock purchase, the target corporation—

(1) shall be treated as having sold all of its assets at the close of the acquisition date at fair market value in a single transaction to which section 337 applies, and

(2) shall be treated as a new corporation which purchased all of the assets referred to in paragraph (1) as of the beginning of the day after the acquisition date.

As a result of New JEC's section 338 election, the Old JEC affiliated group was treated as if it sold all of its assets to New JEC in complete liquidation.

If the purchasing corporation elects to treat a qualified stock purchase as an asset purchase in complete liquidation of the target corporation, I.R.C. § 338 directs that section 337 shall apply to the deemed asset sale. Section 337(a) provides, in pertinent part:

(a) General Rule—If, within the 12–month period, beginning on the date on which a corporation adopts a plan of complete liquidation, all of the assets of the corporation are distributed in complete liquidation, less assets retained to meet claims, then no gain or loss shall be recognized to such corporation from the sale or exchange by it of property within such 12–month period.

The parties agree that I.R.C. §§ 338 and 337 provide nonrecognition treatment for the gain that the Old JEC affiliated group other-

wise would have recognized from the deemed sale of its assets to New JEC. The parties, however, offer markedly different interpretations of how New JEC's section 338 election affected the prior deferred intercompany transaction. Defendant argues that the Old JEC affiliated group's deemed sale of assets to New JEC required the former to restore the previously recognized, but deferred, gain arising from the deferred intercompany transaction. In support of its position, defendant contends that the deemed asset sale triggered two of the restoration provisions of the consolidated return regulations, Treas. Reg. § 1.1502–13(f)(1)(i) and Treas. Reg. § 1.1502–13(f)(1)(iii). Treas. Reg. § 1.1502–13(f)(1)(i) requires restoration of gain at the time the deferred intercompany transaction property "is disposed of outside the group." According to defendant, the inventory that was the subject of the deferred intercompany transaction was disposed of outside of the Old JEC affiliated group when the Old JEC affiliated group sold all of its assets to New JEC. Treas. Reg. § 1.1502–13(f)(1)(iii) requires restoration of gain on the date "[i]mmediately preceding the time when either the selling member or the member which owns the property ceases to be a member of the group." Defendant also contends that both the selling and purchasing members of the Old JEC affiliated group ceased to be members of the group when the group sold all of its assets in complete liquidation.

Plaintiff counters that the Old JEC affiliated group was not required to restore to income the gain arising from the deferred intercompany transaction because the I.R.C. § 337 nonrecognition provision applies to the consolidated return regulations.[6] Plaintiff premises this argument on the fact that the consolidated return regulations do not prohibit the application of section 337:

> Defendant now attempts to apply the restoration provisions of Treas. Regs. § 1.1502–13(f) in a manner completely inconsistent with the nonrecognition provisions of IRC § 337, which are specifically

incorporated by IRC § 338. Such attempt not only contravenes the clear statutory language and intent of IRC §§ 338 and 337 but the consolidated return regulations themselves. Specifically, the regulations provide that "[t]he Code, or other law, shall be applicable to the group to the extent the regulations do not exclude its application." Nothing in the consolidated return regulations excludes the application of IRC §§ 338 and 337. Unlike specifically enumerated overriding exceptions to the nonrecognition provisions, the consolidated return regulations dealing with DIT restoration is silent on its application in an IRC §§ 338 and 337 context. Defendant would like to interpret that silence as imposing another exception to the nonrecognition provisions of IRC §§ 338 and 337. However, this Court has made plain that if the Secretary desires to disqualify a group of taxpayers from a provision to which they would otherwise be entitled under the Code and regulations, the Secretary is required to make amendments to reflect such prohibition.

Plf's Br. filed July 2, 1996, at 14 (citation omitted).

Defendant's position prevails. Although plaintiff correctly notes that the consolidated return regulations do not exclude I.R.C. § 337, this point is not dispositive of the issue at hand. In order to succeed on its refund claim, plaintiff also must prove that the deferred intercompany transaction falls within the scope of I.R.C. §§ 338 and 337. "Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." *Park 'N Fly Inc. v. Dollar Park & Fly, Inc.,* 469 U.S. 189, 194, 105 S.Ct. 658, 661, 83 L.Ed.2d 582 (1985) (citation omitted). The Federal Circuit has applied in tax cases the Supreme Court's direction in *Caminetti v. United States,* 242 U.S. 470, 37 S.Ct. 192, 61 L.Ed. 442 (1917), that "[w]here the language is plain and admits of no more than one meaning the duty of interpretation does

---

6. The Tax Reform Act of 1986, Pub.L. No. 99–514, 100 Stat. 2085 (codified as amended in 26 U.S.C.), repealed the nonrecognition provision of I.R.C. § 337. With the repeal of the nonrecognition provision, Congress also deleted the language in section 338 that applied section 337 to deemed asset sales. The parties agree that the transactions at issue predate the repeal of section 337 and that the Internal Revenue Code of 1954 governs this case.

not arise and the rules which are to aid doubtful meanings need no discussion." *Henry v. United States,* 793 F.2d 289, 293 (Fed.Cir.1986).

I.R.C. § 338(a) states that "the target corporation—(1) shall be treated as having sold all of its assets at the close of the acquisition date at fair market value in a single transaction to which section 337 applies." The words "to which section 337 applies" follow immediately after the statute's description of the target corporation's sale of all its assets in a single transaction. The court reads the language of section 338 as instructing that section 337 applies to the target corporation's deemed single transaction sale of all its assets. In the case at bar, the Old JEC affiliated group was the target corporation and the Old JEC affiliated group's sale of its stock to New JEC was the deemed asset sale to which section 338 refers. Nothing in section 338 suggests that the section 337 nonrecognition provision applies to the prior deferred intercompany transaction, which was unrelated to the deemed asset sale.

Plaintiff maintains that by restoring the gain from the deferred intercompany transaction, the IRS is taxing the deemed asset sale in violation of section 338:

It is ... difficult to understand how defendant can interpret the interaction of the consolidated return regulations with Code §§ 338 and 337 as subjecting restored gains triggered by the Code § 338 transaction to tax. On the one hand, defendant argues that "no gain or loss is being recognized as a result of the sale of the Old JEC stock." But, on the other hand, defendant concedes that the Treas. Reg. § 1.1502–13(f)(1)(iii) trigger occurred precisely because of the I.R.C. § 338 transaction. It is in fact the deemed sale of assets that defendant now argues is taxable in spite of the clear statutory language of I.R.C. § 337 that no gain or loss shall be recognized.

Plf's Br. filed Dec. 5, 1996, at 8 (citation omitted).

Plaintiff's argument misconstrues the effect that the Old JEC affiliated group's deemed sale of assets to New JEC had on Old JEC's tax liability. The sale had two distinct consequences. First, by virtue of the application of I.R.C. §§ 338 and 337, the Old JEC affiliated group was not required to recognize as gain the difference between the amount received from New JEC and its basis in the assets. Second, because the sale triggered two of the restoration rules of the consolidated return regulations, the Old JEC affiliated group was required to restore to income previously recognized, but deferred, gain. This second consequence was not a tax on the Old JEC affiliated group's deemed sale of its assets. Rather, it was a tax on the prior deferred intercompany transaction between certain members of the Old JEC affiliated group.

Defendant's interpretation of I.R.C. § 337 is consistent with *Winer v. Commissioner,* 371 F.2d 684 (1st Cir.1967). The taxpayer in *Winer* was the sole shareholder of a liquidated corporation. During the first four months of the corporation's final taxable year, but prior to liquidation, the corporation sold inventory in the regular course of business. The corporation, on its final tax return, included in "costs of goods sold" the value of the inventory items remaining when the liquidation occurred that were sold shortly after it adopted a plan of liquidation. The taxpayer argued that the inclusion of the inventory items in "cost of goods sold" was legitimate because all of the remaining post-liquidation inventory had been sold in a I.R.C. § 337 sale to one buyer. The court of appeals did not agree with the taxpayer's application of I.R.C. § 337 to pre-liquidation transactions:

Both the Senate and House reports recognized that the statute was intended to have no impact on the tax consequences of corporate operations apart from liquidation....

That there seem to be no cases of a liquidating corporation seeking to make section 337 do double duty (i.e., avoid double taxation of a sale of ending inventory and reduce costs of goods sold) is thoroughly understandable. A waiver of normal accounting practices is not so easily to be read into specific purpose tax provisions. Petitioner here seeks to use a sale on liquidation to alter the tax consequences of operations prior to liquidation....

*Id.* at 686. Although the pre-liquidation transaction in *Winer* did not involve the consolidated return regulations, the case is relevant for the proposition that I.R.C. § 337 does not apply to transactions unrelated to the liquidation process. Like the taxpayer in *Winer,* plaintiff is attempting to "use a sale on liquidation to alter the tax consequences of operations prior to liquidation."

Because the plain meaning of I.R.C. § 338 is clear and is only subject to one interpretation, the court does not need to turn to secondary tenets of statutory construction. *See Henry,* 793 F.2d at 293. However, the court offers the following review of the tax law history leading to the enactment of section 337 as further evidence that Congress did not intend for I.R.C. §§ 338 and 337 to apply to transactions outside of the complete liquidation context.

Prior to the addition of I.R.C. § 337 to the tax code in 1954, a corporation wishing to liquidate could structure one of two types of transactions. First, the corporation could sell its assets and distribute the proceeds of the sale to its stockholders. Second, the corporation could make an in-kind distribution of its assets to its stockholders, and then the stockholders could sell the assets to a third party. *Verito v. Commissioner,* 43 T.C. 429, 437, 1965 WL 1212 (1965). Although both transactions led to the same end result—namely, the liquidation of the corporation and the sale of the corporation's assets—pre-1954 tax law treated the transactions differently. Prior law eliminated the corporate level tax for a corporation that liquidated its assets in-kind to its shareholders. However, a corporation that sold its assets and then liquidated the proceeds was subject to a corporate level tax on the sale of the assets.

Given that a corporation's tax liability depended on how it structured its liquidating transaction, corporations primarily followed the in-kind liquidation approach. In many instances the IRS challenged the form of the transaction, arguing that the liquidating corporation in fact was the seller of the assets and was using the stockholders as conduits to avoid the corporate level tax. In *Commissioner v. Court Holding,* 324 U.S. 331, 65

S.Ct. 707, 89 L.Ed. 981 (1945), the Supreme Court went behind the form of an in-kind liquidation and found that the corporation, not the stockholders, had sold the assets, thus subjecting the corporation to a tax on the gain from the sale. Five years later, in *United States v. Cumberland Pub. Serv. Co.,* 338 U.S. 451, 70 S.Ct. 280, 94 L.Ed. 251 (1950), the Supreme Court, confronted with similar facts, reached the opposite result and refused to attribute the stockholder sale to the corporation.

In 1954 Congress determined that the form of the liquidating sale should not be determinative of a corporation's tax liabilities. Toward this end Congress enacted I.R.C. § 337, which allowed a corporation to sell its assets tax free so long as the sale was in the course of the complete liquidation of the corporation:

> To correct the uncertainty of the existing law, Congress incorporated section 337 into the Internal Revenue Code of 1954. The purpose of this section was to exempt the corporation from liability for the tax on the gain on the sale of its assets and to take it into account only in computing the tax on the individual shareholders under section 331. This eliminated the possibility of double taxation of the stockholders and of a corporation selling its assets in order to liquidate, resulting from a failure to observe the proper formalities in effecting a disposition of the corporation's assets.

*Towanda Textiles, Inc. v. United States,* 149 Ct. Cl. 123, 127–28, 180 F.Supp. 373, 375 (1960); *see Telephone Answering Serv. Co. v. Commissioner,* 63 T.C. 423, 433, 1974 WL 2758 (1974) (containing similar language), *aff'd,* 546 F.2d 423 (4th Cir.1976) (Table); *Verito,* 43 T.C. at 439–40 (containing similar language).

I.R.C. § 337 thus provides for the non-recognition of corporate-level gain in a specific fact pattern—a corporation's sale of its assets pursuant to a plan of complete liquidation. The statute leaves intact the general rule of corporate taxation outside of the complete liquidation context: "[A] complete liquidation is a prerequisite to the application of Section 337." *Telephone Answering Serv.,*

63 T.C. at 434; *see Winer,* 371 F.2d at 686 ("Both the Senate and the House Reports recognized that the statute was intended to have no impact on the tax consequences of corporate operations apart from liquidation."); Jacob Mertens, Jr., *The Law of Federal Income Taxation,* § 42.02 (1997) ("Section 337 applied only when a sale of assets was made in connection with the complete liquidation of a corporation.").

I.R.C. § 338 creates the fiction that a qualified stock purchase is a single transaction sale of all of the target corporation's assets in a complete liquidation. When this fiction is created, the fact pattern to which Congress intended section 337 to apply arises. Section 338 therefore provides that section 337 shall apply to the deemed asset sale. Section 338 limits the application of section 337 to the deemed asset sale, because section 337 is only concerned with the nonrecognition of gain for a corporation that is selling its assets as part of the liquidation process. Plaintiff's attempt to apply the section 337 nonrecognition provision to the deferred intercompany transaction is inconsistent with both the plain language of the statute and the long judicial recognition of the congressional intent underlying the statute.

■ Because I.R.C. § 337 does not apply to the deferred intercompany transaction, the obligation of the Old JEC affiliated group to restore the deferred gain to income turns on whether plaintiff's actions triggered one of the restoration rules of the consolidated return regulations. As previously discussed, defendant argues that the gain from the deferred intercompany transaction must be restored pursuant to Treas. Reg. § 1.1502–13(f)(1)(i) or (f)(1)(iii). *See supra* pp. 717–18. Plaintiff counters that the Old JEC affiliated group's deemed sale of its assets to New JEC did not constitute a restoration event. In support of its position, plaintiff cites Treas. Reg. § 1.1502–13(f)(2)(ii)(b), which provides:

Subparagraph (1)(iii) [the triggering provision when a member leaves the consolidated group] of this paragraph shall not apply in a case where:

(b) The group is terminated, and immediately after such termination the corpora-

tion which was the common parent (or a corporation which was a member of the affiliated group and has succeeded to and become the owner of substantially all of the assets of the former parent) owns the property involved and is the selling member or is treated as the selling member under paragraph (c)(6) of this section.

Paragraphs (d) and (e) of this section and this paragraph shall apply to such selling member. Thus, for example, subparagraph (1)(iii) of this paragraph does not apply in a case where corporation P, the common parent of a group consisting of P and corporations S and T, sells an asset to S in a deferred intercompany transaction, and subsequently all of the assets of S are distributed to P in complete liquidation of S. Moreover, if, after the liquidation of S, P sold T, subparagraph (1)(iii) of this paragraph would not apply even though P ceased to be a member of the group.

Plaintiff's reliance on Treas. Reg. § 1.1502–13(f)(2)(ii)(b) is flawed. In this regulation the former parent of the affiliated group was the selling member in the deferred intercompany transaction and now owns the subject property. In the case at bar, the former parent, Old JEC, was not the selling member and does not now own the subject property. Therefore, plaintiff's actions do not fall within the regulation.

As a second ground for deferring restoration of the gain, plaintiff cites Treas. Reg. § 1.1502(f)(2)(i)(a)(2), which provides, in pertinent part:

Subparagraph (1) [requiring restoration] shall not apply solely because of a termination of the group ... resulting from

(a) the acquisition by a nonmember corporation of ... (2) stock of the common parent ...,

....

if all the members of the terminating group (other than such common parent if its assets are acquired) immediately before the acquisition are members immediately after the acquisition of another group (hereinafter referred to as the "succeeding group") which files a consolidated return for the first taxable year ending after the

date of acquisition. The members of the succeeding group shall succeed to any deferred gain or loss of members of the terminating group and to the status of such members as selling or purchasing members.

This regulation, while permitting a continued deferral of previously recognized gain from an intercompany transaction, ensures that such gain eventually will be taken into account for tax purposes by conditioning its operation on 1) the continued existence of the members of the former affiliated group, and 2) carry over of the tax attributes of the former affiliated group members to the succeeding group.

I.R.C. § 338(a) permits a corporation purchasing the stock of another corporation to treat the stock acquisition as an asset acquisition.

Under this provision [section 338(a) ], a corporation that elects, or is deemed to have elected, under this section shall treat a qualified stock purchase as a purchase of assets that the target corporation sold pursuant to a complete liquidation under section 337. Then, the purchasing corporation obtains a step-up in basis of the assets of the target corporation, because it treats the stock acquisition as an asset acquisition, *see* I.R.C. § 1012, even though no liquidation of the target corporation actually occurs. *The target corporation is treated for federal income tax purposes as an unrelated "new" corporation that now holds the assets formerly held by the "old" corporation.*

*Bankers Life and Casualty Co. v. United States*, No. 93 C 4739, 1996 WL 137646, at *10 (N.D.Ill. Mar. 25, 1996) (emphasis added); *see Nestle Holdings, Inc. v. Commissioner*, 70 T.C.M. (CCH) 682, 705 (1995).

When New JEC made its election pursuant to I.R.C. § 338, the existence of the members of the Old JEC affiliated group terminated. Although the members re-

emerged on the day after the acquisition, *see* I.R.C. § 338(a)(2), they came back to life as "new" corporations free of their former tax attributes. Thus, the members of the Old JEC affiliated group did not become members of the New JEC affiliated group, as required by Treas. Reg. § 1.1502–13(f)(2)(i)(a)(2). *See* Jack Crestol, *et al.*, *The Consolidated Tax Return* ¶ 4.02[4][f] (5th ed. 1993) ("[T]he exception [to the general restoration rule] does not apply if the common parent is acquired by another consolidated group and a Section 338 election is made for the target group, because the companies would not be members of the acquiring group once a Section 338 election is made.") Furthermore, because the members of the Old JEC affiliated group shed their tax attributes when they became new corporations on the day after the acquisition, they did not "succeed to any deferred gain or loss of members of the terminating group and to the status of such members as selling or purchasing members." *Id.* Consequently, plaintiff has not satisfied the requirements of Treas. Reg. § 1.1502–13(f)(2)(i)(a)(2) and must restore the deferred gain to income.

## CONCLUSION

Accordingly, based on the foregoing,

1. Defendant's cross-motion for partial summary judgment is granted, and plaintiff's motion for partial summary judgment is denied.

2. By June 19, 1997, the parties shall file a Joint Status Report reporting on their efforts to resolve informally the remaining issues.[7]

---

7. The court's finding that plaintiff was required to restore the deferred gain to income does not constitute a final judgment. Plaintiff argues, and defendant agrees, that other outstanding issues

exist. *See* Transcript of Proceedings, *Eckerd Corp. v. United States*, No. 95–733T, at 18–19 (Fed.Cl. Apr. 22, 1997).